In re PIERCE MORTUARY COLLEGES, INC., Debtor.

In re PROFESSIONAL TRAINING SCHOOLS, INC., Debtor.

MICHIGAN MUTUAL INSURANCE CO., American Standard Lloyd's Insurance Company, Amerisure Lloyd's Insurance Co., Employer's Fire Insurance Co., and Guaranty National Insurance Co. Plaintiffs,

v.

Pat W. FORREST, Jerre Kauck, Grace S. Self, Virginia Henderson, Betty J. Standridge, Frederick Bjerke, Jack Muse, Roger Scarlotti, Nanette Rivers, Marion C.H. Brown, Richard Newell, Janet Shuford, Arthur Newell, Ethel M. Newell, Billie J. Degen, D.L. Norton, Nanette R. Scroggins, Richard Gambrell, Sharon Whalin, Patricia Bailey, Mike Evans, Pam Rehder, and J. Warren Casey, Defendants.

Bankruptcy Nos. 396–36759–HCA–11, 396–36760–RCM–11.
Adversary No. 396–3683.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 14, 1997.

Dale Wooten, Dallas, TX, for debtors.

John C. Tollefson, Knox & Tollefson, Dallas, TX, special counsel, for debtors.

Daniel C. Stewart, Winstead, Secrest & Minick, P.C., Tillery & Tillery, Ted B. Lyon & Associates, P.C., Dallas, TX, for judgment creditors.

David M. Pruessner, Fletcher & Springer, L.L.P., Dallas, TX, for Michigan Mut. Ins. Co.

John S. Morgan, Adams, Coffey & Duesler, L.L.P., Beaumont, TX, for Emploters Fire Ins. Co. a/k/a Commercial Union Ins. Co.

Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, Dallas, TX, for American Standard Lloyd's Ins. Co.

Kevin J. Cook, Payne & Blanchard, David J. Shubert, Vial Hamilton, Koch & Knox, L.L.P., Dallas, TX, for Amerisure Lloyd's Ins. Co.

Judith Bagley, Patton Boggs, L.L.P., Dallas, TX, for Guaranty Nat. Ins. Co.

### Amended Order Granting the Insurers' Combined Motion for Summary Judgment [1]

HAROLD C. ABRAMSON, Bankruptcy Judge.

On the 29th day of April 1997, the Court considered several motions for summary judgment together with the corresponding responses and replies. The Insurers' Combined Motion for Summary Judgment ("Insurers' Combined Motion"), the Brief in Support of Insurers' Combined Motion for Summary Judgment, and the Judgment Creditors' Motion for Summary Judgment and Brief in Support ("Judgment Creditors' Motion") were filed on March 28, 1997. Each of the plaintiff insurance companies filed individual motions for summary judgment. Michigan Mutual's Motion for Summary Judgment and Memorandum in Support ("Michigan Mutual's Motion"), American Standard Lloyd's Insurance Company's Motion for Summary Judgment ("ASLIC's Motion"), Amerisure's Supplemental Motion for Summary Judgment and Supporting Brief ("Amerisure's Motion"), Employers' Fire Insurance Company, a/k/a Commercial Union Insurance Company's Motion for Summary Judgment ("Employers' Motion"), and the Supplemental Motion and Brief in Support of Summary Judgment of Guaranty National Insurance Company ("Guaranty National's Motion") were filed March 28, 1997. The Debtors filed their Joinder in the Motion for Summary Judgment of Judgment Creditors and Opposition to Motion for Summary Judgment of Insurers ("Debtors' Joinder") on April 28, 1997.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). After consideration of the pleadings and arguments of counsel, the Court makes the following Memorandum Opinion which shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I. *Facts*

In this adversary proceeding the parties, Michigan Mutual Insurance Co., et al. ("the Insurers") and Pat W. Forrest, et al. ("the Judgment Creditors"), each seek a declaratory judgment from the Court on the issue of whether there is insurance coverage for the damages awarded to the Judgment Creditors against Pierce Mortuary Colleges, Inc. and Professional Training Schools, Inc. ("the Debtors" or "the Insureds") by a Texas state court.

### A. *The State Court Lawsuit*

The Debtors owned and operated mortician training schools. The students learned, among other things, to embalm human remains. The Judgment Creditors each took deceased family members or loved ones to various funeral homes with instructions that the bodies not be embalmed. The Judgment Creditors alleged and a jury found that the Debtors wrongfully obtained the bodies and

---

1. The original Memorandum Opinion Regarding Motions for Summary Judgment and the original Order Granting Insurers' Combined Motion for Summary Judgment ("Original Opinion and Order") were entered on July 1, 1997. It came to the Court's attention, through Employers' Unopposed Motion to Modify This Court's Memorandum Opinion and Order Regarding Motions for Summary Judgment, filed July 9, 1997, that the Court mistakenly noted that the Original Opinion and Order did not apply to Employers' as a party to the Insurers' Combined Motion. To remove any such indication and to clarify that the summary judgment ruling does apply to Employers' as a party to the Insurers' Combined Motion, the Court amends its Original Opinion and Order.

allowed them to be used for instructional purposes in the Debtors' clinical embalming program without the knowledge or consent of the Judgment Creditors. All of the bodies were embalmed between November 17, 1986 and May 4, 1989.

When the Judgment Creditors became aware of these facts, sometime in late 1990 or early 1991, they filed a lawsuit against the Debtors in Texas state court alleging that the Debtors engaged in intentional, grossly negligent and reckless conduct ("the State Court Lawsuit"). The Judgment Creditors further alleged breach of contract and deceptive trade practices. The case was tried by Judge John Marshall in the 14th Judicial District Court of Dallas County.

The jury made the following relevant findings:

1) Eighty percent of the negligence which "proximately caused the occurrence in question" was attributable to the Debtors.

2) The Debtors knowingly engaged in false, misleading, or deceptive acts or practices or knowingly engaged in an unconscionable course of conduct in obtaining the bodies of decedents for embalming and instructional use; and such acts were the producing cause of damages to the decedents' survivors.

3) The amount of money which would fairly and reasonably compensate the survivors' mental anguish which occurred as a result of the Debtors' negligence was $200,000 for each of the Judgment Creditors with the exception of one Judgment Creditor who was awarded $250,000.[2]

4) The Debtors were grossly negligent in embalming or using the bodies of the deceased persons in their clinical embalming program.

The state court adopted the jury's verdict in its judgment, signed January 15, 1996, against the Debtors.

### B. *The Declaratory Judgment Actions*

The Debtors were insured at different times by all of the plaintiffs in this adversary proceeding. American Standard Lloyd's Insurance Company ("ASLIC") and Guaranty National Insurance Company ("Guaranty National") insured the Debtors from July 15, 1986 to July 15, 1990. Amerisure Lloyd's Insurance Company ("Amerisure") and Michigan Mutual Insurance Company ("Michigan Mutual") insured the Debtors from July 15, 1990 to July 15, 1992. Amerisure was the only insurer the Court is aware of after July 15, 1992.

The Insurers filed two declaratory judgment lawsuits in Texas state court. One suit, styled *American Standard Lloyd's Insurance Company v. Pierce Mortuary Colleges, Inc., et al.*[3] ("First Declaratory Judgment Action"), was filed July 15, 1992 and sought a declaration that the events which were the basis of the Judgment Creditors' lawsuit were not covered by the Insurers' policies. The other suit, styled *Michigan Mutual Insurance Company, et al. v. Pat W. Forrest, et al.* ("Second Declaratory Judgment Action"), was filed October 10, 1996 against the Judgment Creditors and sought a declaration that there was no coverage for the judgment and damages awarded. Both declaratory judgment actions were originally filed in Texas state court.

On September 20, 1996, Judge Marshall, who also presided over the State Court Lawsuit, rendered a partial summary judgment for the Insurers in the First Declaratory Judgment Action finding that there was no insurance coverage. The state court's Order Granting Summary Judgment did not state the reasons for the decision on coverage and, reportedly, did not dispose of all issues in that law suit.

### C. *The Bankruptcy*

On September 20, 1996, both Debtors filed petitions for relief under Chapter 11 of the

---

**2.** The jury was instructed to award damages only for the Judgment Creditors' mental anguish. A trial court transcript dated July 27, 1995 (pp. 1448–1449) indicates that there was insufficient evidence to allow the jury to award damages based upon physical injury. There were no damages awarded for property damage.

**3.** The other insurance companies, with the exception of Guaranty National, were parties to the lawsuit. The Judgment Creditors were not parties to the First Declaratory Judgment Action.

Bankruptcy Code. On December 19, 1996, the First Declaratory Judgment Action was removed to this Court. On December 20, 1996, the Second Declaratory Judgment Action was also removed. Motions to Remand were heard, and the Court remanded the First Declaratory Judgment Action, but denied remand of the Second Declaratory Judgment Action.

The Parties have each filed motions for summary judgment raising various issues of insurance coverage law. The Parties stipulate to all facts relied upon for the purposes of these findings.

## II. *Law*

### A. *Summary Judgment Standard*

The Insurers and the Judgment Creditors have each moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Under Rule 56, summary judgment is proper if the matters presented to the Court show that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.[4] In making its determination, the Court must draw inferences from the underlying facts in a light most favorable to the non-movant.[5] The initial burden of proof that there are no genuine issues of material fact is on the movants, but once the movants have met their initial burden, the non-movant must set forth specific facts showing that there is a genuine issue for trial.[6]

### B. *Issues of Law*

There are no genuine issues of material fact. The Court must decide which party, if any, is entitled to summary judgment as a matter of law upon these facts. The Court has before it the following issues of law: 1) whether the state court summary judgment

in the First Declaratory Judgment Action has preclusive effect in this Court in the Second Declaratory Judgment Action; 2) whether the Debtors' acts were "occurrences" as defined by Texas law and by the insurance policies; 3) what effect, if any, do the jury's findings of both negligence and intent have upon coverage; 4) whether the Judgment Creditors suffered bodily injury or property damage of the type covered by the insurance policies; and 5) whether the injuries were sustained during the policy periods. For the reasons detailed below, first, the Court concludes that the state court summary judgment in the First Declaratory Judgment Action does not have preclusive effect in this the Second Declaratory Judgment Action. Second, the threshold issue of whether there were "occurrences" as defined by Texas law construing the various policies must be resolved in favor of the Insurers as a matter of law. Third, the jury's alternative finding of negligence has no bearing upon that conclusion. Finally, based upon the above conclusions, the Court finds it is unnecessary to decide whether the Judgment Creditors suffered bodily injury or property damage as defined by the policies or whether the injuries were sustained during the policy periods.

### C. *The State Court Summary Judgment in Favor of the Insurers Does Not Have Preclusive Effect*

In its separate Motion for Summary Judgment ASLIC argues that the state court's summary judgment in the Insurers' favor in the First Declaratory Judgment Action has preclusive effect in this Court. When deciding the preclusive effect of a Texas State Court's judgment on a particular issue, the Court must apply Texas law of collateral estoppel and res judicata.[7]

---

4. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

6. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

7. *Gates v. Walker, et al.*, 865 F.Supp. 1222, 1236 (S.D.Miss.1994), *aff'd*, 62 F.3d 394 (5th Cir. 1995); *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir.1997).

**554**

### 1. *Collateral Estoppel*

The elements of collateral estoppel, or issue preclusion, under Texas law, are: 1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; 2) those facts were essential to the judgment in the first action; and 3) the parties or those in privity were cast as adversaries in the first action.[8]

The Insurers cite *Royal Insurance Company of America v. Quinn–L Capital Corporation* [9] to support the position that the Judgment Creditors may be bound by the state court's resolution of the coverage issue in the First Declaratory Judgment Action despite their non-party status. *Quinn–L* had a procedural history quite similar to this case. The Investor–Plaintiffs sued Quinn–L and its sole shareholder, Lovell, and obtained a judgment. Royal, the insurance carrier for Quinn–L, prevailed in a declaratory judgment action over coverage. The Investor–Plaintiff's were not parties to that coverage action; they attempted intervention, but it was denied on the grounds that their interests were adequately represented by Quinn–L. The Investor–Plaintiffs later sued Royal for coverage of their judgment against Quinn–L. Royal filed a declaratory judgment action to preclude litigation of coverage issues. Judge Barefoot Sanders found that there was privity because Quinn–L assigned its rights under the insurance contract to the Investor–Plaintiffs, and also found that the Investor–Plaintiffs were adequately represented by Quinn–L.[10] The Fifth Circuit Court of Appeals upheld Judge Sanders decision on the privity and adequate representation issues noting:

> [A] non-party will be considered "in privity or sufficiently close to a party in the prior suit so as to justify preclusion," where the party to the first suit is so closely aligned with the nonparty's interests as to be his "virtual representative."

In order for virtual representation to arise, however, there must be "an express or implied legal relationship" between the party and the nonparty "in which [the] part[y] to the first suit [is] accountable to [the] non-part[y] who file[s] a subsequent suit raising identical issues."[11]

The Court of Appeals agreed that the nonparty should be bound based on the following District Court findings: 1) the Investor–Plaintiffs and Lovell colluded to obtain a large default judgment against Quinn–L; 2) the Investor–Plaintiffs and Lovell were parties to a cooperation agreement; 3) Lovell assigned his right to sue Royal for his personal damages to the Investor–Plaintiffs; 4) Lovell assigned Quinn–L's rights in the insurance policy; 5) Lovell was "bought-off;" and 6) the Investor–Plaintiffs and Quinn–L (through Lovell) colluded to defeat Royal and share in the insurance proceeds.[12]

The facts in *Quinn–L* which compelled the court to make findings of privity and virtual representation are simply not present in this case.

The Judgment Creditors cite *Dairyland County Mutual Insurance Company v. Childress* [13] to support the argument that they are not precluded from relitigating the coverage issues by the collateral estoppel doctrine. The procedural history of *Childress* is also similar to the present case. The injured party sued the insured and obtained a judgment. While that suit was pending the insurance company sued its insured for a declaration of no coverage. The injured person was not a party to that action. An agreed judgment of no coverage disposed of the declaratory judgment action. The injured party, now a judgment creditor, sued the insurance company asserting coverage. The trial court rendered judgment for the insurance company. The Court of Appeals reversed, and the Supreme Court affirmed, finding that collateral estoppel didn't apply

---

8. *B.M.L. & Jones v. Cooper*, 919 S.W.2d 855, 858 (Tex.App.—Austin 1996, no writ); *Finger v. Southern Refrigeration*, 881 S.W.2d 890, 895 (Tex.App.—Houston [1st Dist.] 1994, writ den'd).

9. 759 F.Supp. 1216 (N.D.Tex.1990), *aff'd in part & rev'd in part*, 960 F.2d 1286 (5th Cir.1992).

10. *Quinn-L*, 759 F.Supp. at 1232.

11. *Quinn-L*, 960 F.2d at 1297.

12. *Quinn-L*, 960 F.2d at 1297–98.

13. 650 S.W.2d 770 (Tex.1983).

because the injured person could not be bound by a judgment where he was not a party or in privity. In *Childress* there was an agreement between the insured and the insurance company which clearly established that the insured and the judgment creditor did not have the same interests. Such an agreement is not present in this case; therefore *Childress* is distinguishable.

 Nevertheless, the Court concludes that in the present case there are no facts which would establish privity or virtual representation such that it could be said that the Judgment Creditors already had their day in court on this issue. "A privy is one who is so connected in law with a party to a judgment as to have such an identity of interests that the party represented the same legal right in the previous suit." [14] Those in privity with a party may include persons who exert control over the action, persons whose interests are represented by the party, or successors in interest to the party.[15] Privity is not established, however, by the mere fact that persons may happen to be interested in the same question or in proving the same facts.[16] The Judgment Creditors did not control the First Declaratory Judgment Action, and they are not successors in interest to the Debtors. The Debtors were not obligated to represent the Judgment Creditors and could have settled on their own behalf at any time. The Judgment Creditors' interests were not represented by the Debtors simply because they both might desire the same result. Counsel for one of the Insurers admitted as much when he claimed that the reason for the Insurers' filing two suits was to make the finding of no coverage binding against both the Debtors and the Judgment Creditors.

14. *B.M.L.*, 919 S.W.2d at 858–59 (citations omitted).

15. *Klein v. Dooley*, 933 S.W.2d 255, 260 (Tex. App.—Houston [14th Dist.] 1996, writ requested).

16. *Finger*, 881 S.W.2d at 895.

17. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996); *McGee v. McGee*, 936 S.W.2d 360, 364 (Tex.App.—Waco 1996, writ requested).

The Court concludes that there was no privity and no virtual representation between the Debtors and Judgment Creditors; thus, the doctrine of collateral estoppel does not preclude the Judgment Creditors from relitigating the same insurance coverage issue.

### 2. *Res Judicata*

 The Insurers alternatively claim that the partial summary judgment in the First Declaratory Judgment Action has preclusive effect under the doctrine of res judicata. Under Texas law, the elements of res judicata, or claim preclusion are: 1) a prior final judgment on the merits by a court of competent jurisdiction; 2) identity of parties or those in privity with them; and 3) a second action based on the same claims as were raised or could have been raised in the first action.[17]

In this case, the state court's summary judgment is not a final judgment, but an interlocutory partial summary judgment. The parties are not identical, as the Judgment Creditors were not parties to the First Declaratory Judgment Action. Additionally, they were not in privity with the Debtors for the reasons stated in the above discussion. The doctrine of res judicata does not apply to the facts in this case.

### D. *The Judgment Creditors' Injuries Were Not Caused by Occurrences as Defined by the Policies and Texas Insurance Law*

#### 1. The Ultimate Issue and the Arguments

The ultimate issue before the Court is whether the injuries suffered by the Judgment Creditors were caused by "occurrences," as defined in the various insurance policies.[18] The Court must look to Texas law

18. The policies generally state that they will cover any amounts which the insureds are legally obligated to pay because of property damage or bodily injury caused by an "occurrence." ASLIC's and Employers' policies *define an occurrence as "an accident, ..., which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."* One Guaranty National policy, dated August 13, 1986 to July 15, 1987, defines an occurrence as "an accident, or happening or event, ... which unexpectedly or unintentionally results in personal injury, property damage or

on this issue.[19] Texas Courts have found that there is no accident or occurrence where a party has acted with intent. The question to be examined is whether the required intent is the intent to cause the particular injury or the intent to do the act which leads to the injury.

On this issue, the Insurers have essentially relied on the Texas Supreme Court's *Maupin*[20] opinion, and its progeny for the rule that if the insured intends the act which causes the injury, there is no accident and therefore no occurrence. The Judgment Creditors cite the Texas Court of Appeals *Cowan*[21] opinion for the rule that as long as the insured does not intend the actual consequences of the act there is an accident and therefore, an occurrence.

From a thorough reading of the Texas and Fifth Circuit case law the Court concludes that neither party is entirely correct.

### 2. *Analysis of Texas and Fifth Circuit Case Law Regarding the Meaning of "Occurrence"*

There are essentially four Texas Supreme Court cases which have discussed the meaning of "occurrence" or "accident."[22] *Maupin* was the first Texas Supreme Court case to address the meaning of "occurrence;" thus it is the starting point in the Court's analysis. In *Maupin* the insured party had an agreement with an individual to remove dirt from what was believed to be that individual's

property. In fact, the property belonged to someone else. The true owner of the property sued for trespass, won damages, and the court decided there was no coverage. The insurance policy in *Maupin* defined occurrence as an accident or condition which causes physical injury or destruction of property which was not intended. The *Maupin* court adopted the following rule: "[w]here acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by an accident even though that result may have been unexpected, unforeseen and unintended."[23] In applying the rule, the Court found no coverage where: "The respondent's acts were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen and unintended."[24] The *Maupin* court did not mention that the injury was the natural result of the respondent's actions, a requirement stated in the rule it adopted; nevertheless, this Court notes that trespass is the natural result of the intentional act of entering another's land without authorization. The slight difference between the *Maupin* court's statement of the rule and its application of the rule seems to have lead to confusion of subsequent courts attempting to apply the decision. Some courts have found no coverage where the insured intended the act, and the injury was a natural result of that act.[25] Other courts have seized upon

advertising liability." The Guaranty National policy, dated July 15, 1989 to July 15, 1990, defines an occurrence as "an accident, ... that results in 'Bodily Injury' or 'Property Damage' that is not expected or not intended by the 'Insured.'" Amerisure defines occurrence as "an accident,...." In the context of bodily injury or property damage the Michigan Mutual policy defines occurrence as "an accident, ... resulting in 'bodily injury' or 'property damage'..." These latter two policies do not contain the terms "unexpected" or "unintended."

19. *Ruhlin v. New York Life Ins. Co.*, 106 F.2d 921, 923 (3rd Cir.1939).

20. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex.1973).

21. *Trinity Universal Insurance Co., et al. v. Cowan*, 906 S.W.2d 124 (Tex.App.—Austin 1995) *rev'd*, 945 S.W.2d 819 (Tex.1997).

22. *Maupin*, 500 S.W.2d 633 (Tex.1973); *State Farm v. S.S. & G.W.*, 858 S.W.2d 374 (Tex.1993);

*Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549 (Tex.1976); *Cowan*, 945 S.W.2d 819.

23. *Maupin*, 500 S.W.2d at 635 (citing *Thomason v. United States Fidelity & Guar. Co.*, 248 F.2d 417 (5th Cir.1957)).

24. *Maupin*, 500 S.W.2d at 635.

25. *Southern Farm Bureau Cas. Ins. Co. v. Brock, et al.*, 659 S.W.2d 165, 166–67 (Tex.App.—Amarillo 1983, writ ref'd) (finding damages caused when the insured rammed his car into another car to stop a shooting were not caused by an accident because the insured should have known that the damage he caused was the natural and probable consequence of his actions); *Meridian Oil Prod., Inc. v. Hartford Accident & Indem. Co.*, 27 F.3d 150, 152 (5th Cir.1994) (finding that Texas courts "afford coverage for fortuitous damages but deny coverage when damages are the natural and probable consequence of intentional conduct .... coverage does not exist for inevit-

the intentional act language and have found no coverage where the insured simply intended the act without discussing whether the injury sustained was the natural result of that act.[26]

■ This Court concludes that the proper rule to be applied from *Maupin* is that there is no accident or occurrence where the insured intends the act and the injury is the natural and probable result of that act. Further support for this conclusion can be found in a recent Texas Supreme Court reiteration of the *Maupin* decision, *State Farm Fire & Cas. Co. v. S.S. & G.W.*[27] In *S.S.*, the Texas Supreme Court states that, before a finding of no coverage, *Maupin* requires a showing that the injuries sustained are the natural result of an intentional act.[28]

In *S.S.*, the Texas Supreme Court was faced with an intentional injury exclusion.[29] The court concluded that the insured must intend to cause the injury in order for the injury to be excluded from coverage. The court found that there was a question of fact sufficient to preclude summary judgment as to whether the insured intended to transmit herpes when he was asymptomatic. It has been argued before this court and others,[30] that *S.S.* has changed the law regarding what constitutes an occurrence, and insurance companies are now required to show the insured actually intended the injury. However, the *S.S.* court clearly states that its opinion is distinguishable from the *Maupin* opinion and that it does not intend to change the law regarding what constitutes an occurrence.[31] The *S.S.* court shed much light on the difference between analyzing whether an injury is excluded because of the intentional injury exclusion and whether an injury is covered as having been caused by an occurrence, when it said:

> [W]e are not determining whether the transmission of genital herpes was an "accident" or whether G.W.'s acts were intentional, but specifically whether G.W. intentionally caused bodily injury to S.S. by transmitting herpes to her. This distinction is significant because the intentional injury exclusion provision states only that coverage does not exist for intentionally

able results which predictably and necessarily emanate from deliberate actions."); *Misle v. State Farm Mut. Auto. Ins. Co.*, 908 S.W.2d 289, 291 (Tex.App.—Austin 1995, no writ); *State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905 (Tex.App.—Austin 1997, no writ). Two unpublished decisions by the Texas Court of Appeals in Dallas, one written in 1993 and the other in 1997, also clearly adopted this rendition of the rule. *Accord In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F.Supp. 1293, 1320–22 (E.D.Pa.1992), *aff'd*, 15 F.3d 1230 (3rd Cir.1994); *Tennessee Farmers Mut. Ins. Co. v. Evans*, 814 S.W.2d 49, 54 (Tenn. 1991).

**26.** *Baldwin v. Aetna Cas. & Sur. Co.*, 750 S.W.2d 919, 921 (Tex.App.—Amarillo 1988, writ den'd) (stating the rule as "an intentional or willful act is not an 'occurrence' .... and finding no coverage for damages caused by the insured's intentionally overloading trucks in violation of the law.); *Pierce v. Benefit Trust Life Ins. Co.*, 784 S.W.2d 516, 518 (Tex.App.—Amarillo 1990, writ den'd) (finding that a hernia was not caused by an accident because it was caused by the insured's voluntarily and intentionally lifting a heavy bag); *Old Republic Ins. Co. v. Comprehensive Health Care Assoc.*, 786 F.Supp. 629, 633 (N.D.Tex.1992) (finding coverage excluded for damages caused by intentional acts), *aff'd*, 2 F.3d 105 (5th Cir.1993); *Metropolitan Property & Cas. Co. v. Murphy*, 896 F.Supp. 645, 647–48 (E.D.Tex.1995, no writ) (finding no coverage for damage caused when the insured drilled holes in the wall and watched his roommate dress, shower and sleep, because his acts were intentional, thus not accidental); *State Farm Lloyds, et al. v. Kessler*, 932 S.W.2d 732, 738 (Tex.App.—Fort Worth 1996, writ den'd) (stating that when the insured's acts are voluntary and intentional, the results or injuries, even if unexpected, are not caused by an 'accident.').".

**27.** 858 S.W.2d 374 (Tex.1993).

**28.** *S.S.*, 858 S.W.2d at 377, n. 2 (stating that in *Maupin* the court "held that when the insured's acts were voluntary and intentional and the injury is the natural result of the act, the damage was not an accident within the meaning of the policy even though the injury may have been unexpected, unforeseen and unintended.").

**29.** "Coverage ... shall not apply: to bodily injury or property damage caused intentionally by or at the direction of the Insured." *S.S.*, 858 S.W.2d at 377.

**30.** *Cornhill Ins. PLC, et al. v. Valsamis, Inc.*, 106 F.3d 80, 88 (5th Cir.1997), *petition for cert. filed* (U.S. Jun. 9, 1997) (No. 96–1966).

**31.** *S.S.*, 858 S.W.2d at 377, n. 2 (*Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973) is "distinguishable.").

caused bodily injury, and does not state that coverage does not exist for intentional acts.[32]

*S.S.* clearly states that when determining coverage under the intentional injury exclusion the court will look to the insureds intent to cause the injury; whereas, when determining whether something was caused by an occurrence it will look to the intent to do the act and whether the injury was the natural result of that act.

The Texas Supreme Court has given meaning to the term "natural result" in *Republic National Life Insurance Company v. Heyward*,[33] in which the court defined the term "accidental" in the context of an accidental death rider to a life insurance policy. The *Heyward* court held that:

> [I]njuries are "accidental" and within the coverage of an insurance policy—whether the policy speaks in terms "accidental injuries" or "injuries effected through accidental means"—if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by the insured, or would not ordinarily follow from the action or occurrence which caused the injury.[34]

Thus, the court defines "natural result" as a result that is reasonably anticipated or would ordinarily follow from an act.

The most recent Texas Supreme Court occurrence decision is *Cowan*.[35] That case involved a photo lab clerk, Gregory Gage, who retained copies of provocative photos taken of Nicole Cowan and showed them to a friend. The copies were eventually seen by a friend of Ms. Cowan's and Ms. Cowan there-

by discovered Gage's actions. Ms. Cowan obtained a judgment against Gage, then sued Trinity Insurance Co., the issuer of a homeowner's policy covering Gage.[36] It was undisputed by the parties that Gage did not intend to injure Ms. Cowan because he did not intend for her to discover his actions. Ms. Cowan argued that an "occurrence" takes place where the resulting injury was unexpected or unintended regardless of whether the insured party's acts were intentional. The Trinity Insurance Co. argued that under its definition of occurrence, the insured is denied coverage for intentional conduct, even if the resulting injury or damage is unintentional. The Texas Court of Appeals in Austin held in favor of Ms. Cowan, reasoning that "an occurrence takes place where the resulting injury or damage was unexpected or unintended, regardless of whether the policyholder's acts were intentional."[37] The Texas Supreme Court reversed, holding that an insured's intentional tort that results in unintended injuries is not an accident, thus not an occurrence.[38] The Texas Supreme Court in *Cowan* rejected the notion that an insurance company must show that the insured acted with specific intent to injure to prove there has been no occurrence. *Cowan* also rejected the idea that if the insured acts intentionally and that act brings about an injury, there is no accident, no occurrence and no coverage, noting that adopting this approach would render insurance contracts "illusory."[39] The *Cowan* court concluded "Gage's conduct was not an 'accident' because the injury to Cowan, the invasion of privacy, is of a type that 'ordinarily follow[s]' from Gage's conduct and the injuries could be 'reasonably anticipated from the use of the means, or an effect' that Gage can 'be

---

**32.** *Id.*

**33.** 536 S.W.2d 549, 557 (Tex.1976).

**34.** *Heyward*, 536 S.W.2d at 557 (emphasis added).

**35.** *Cowan*, 945 S.W.2d 819.

**36.** The policy in *Cowan* was similar to those involved in the this case. It covered "bodily injury" or "property damage" caused by an "occurrence." An "occurrence" was defined in the

policy as "an accident, including exposure to conditions, that results in bodily injury or property damages during the policy period."

**37.** *Cowan*, 906 S.W.2d at 129, *rev'd*, 945 S.W.2d at 820–21.

**38.** *Cowan*, 945 S.W.2d at 820.

**39.** *Cowan*, 945 S.W.2d at 828.

charged with ... producing.' " [40] The Texas Supreme Court found that Gage could have reasonably anticipated the injuries he caused Ms. Cowan despite the fact that he did not intend for her to know of his actions.

Therefore, when deciding whether an injury is covered under an occurrence policy, the rule under Texas law is that an injury is not caused by an occurrence or accident, and not covered, if it is caused by an intentional and voluntary act of the insured party, and the injury is one which naturally or ordinarily follows from the act or which may be reasonably anticipated by the insured. This varies from the rule generally used by Texas courts when deciding whether coverage is excluded by an intentional injury exclusion.[41] In that type of case, the insured party's intent to cause the actual injury is the relevant inquiry.[42]

This rule is not changed by the insurance policies which define an "occurrence" as an accident which results in bodily injury or property damage which is unexpected or unintended from the standpoint of the insured, rather than as simply "an accident." [43] While one Texas Court of Appeal has come to a different conclusion when faced the "unexpected or unintended" definition,[44] this Court concludes, as the Texas Supreme Court in *Cowan* alluded to, that this is a distinction without a difference.[45] To the extent policies which define occurrence using the "unexpected or unintended" language require a finding of expectation or intent to cause the actual injury before the injury will not be covered, that expectation or intent is objective, not subjective.[46]

In the present case the Court must take the facts establishing liability and apply these rules to decide whether there is a duty to indemnify.[47] The facts establishing liability in this case are the findings of the jury in the State Court Lawsuit. The jury found that the Debtors knowingly and wrongfully obtained the bodies for the purpose of instructional embalming, and those acts were the producing cause of any injuries sustained by the Judgment Creditors.

The simple fact that the Debtors intentionally obtained the bodies and embalmed them does not suffice to deny coverage. However, the Insurers do not have to show that the

**40.** *Cowan*, 945 S.W.2d at 827–28.

**41.** *S.S.*, 858 S.W.2d at 377, n. 2; *Murphy*, 896 F.Supp. at 648; *Misle*, 908 S.W.2d 289. In this case the Insurers alternatively argue that the damages are excluded by the intentional injury exclusions contained in each policy. There is no clear evidence that the Debtors intended to cause the Judgment Creditors' injuries. Intent to injure would be evidenced by a showing that the Debtors desired the result or knew with substantial certainty that it would occur. *Government Employees Ins. Co. v. McGinty, et al.*, 832 F.Supp. 1092, 1094 (W.D.Tex.1993), *aff'd*, 37 F.3d 633 (5th Cir.1994). Texas courts have inferred intent only rarely and typically in cases involving sexual molestation of a child. *See S.S.*, 858 S.W.2d at 379; *Allen v. Automobile Ins. Co.*, 892 S.W.2d 198 (Tex.App.—Houston 1994, no writ).

**42.** *S.S.*, 858 S.W.2d at 377, n. 2. *See, e.g., Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 195 (Tex.App.—Dallas 1992).

**43.** That language is similar to the definitions of occurrence in ASLIC's, Employers', and Guaranty National's policies.

**44.** *Union Pac. Resources Co. v. Aetna Cas. & Sur. Co., et al.*, 894 S.W.2d 401, 404 (Tex.App.—Fort Worth 1994, writ den'd) (holding "it is the conse-

quence rather than the event itself which must be neither expected nor intended.").

**45.** "While older insurance policies defined 'occurrence' as 'an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured,' the definition of 'occurrence' at issue contains no such language and the court of appeals erroneously inferred that it did. .... We note, however, that even under policies with that definition of 'occurrence,' Gage's conduct would preclude coverage." *Cowan*, 945 S.W.2d 819, 828 (citations omitted).

**46.** The *Cowan* court specifically stated that it had no evidence that Gage subjectively intended the consequences, rather, it was agreed by the parties that Gage did not intend the consequences. *See accord In re Texas Eastern*, 870 F.Supp. at 1321.

**47.** In a duty to indemnify case the court must apply the rule to the actual facts establishing liability, whereas in a duty to defend case the court must apply the rule to the allegations in the pleadings. *Cowan*, 945 S.W.2d at 820–23; *J.E.M. et al. v. Fidelity & Cas. Co. of New York*, 928 S.W.2d 668 (Tex.App.—Houston [1st Dist.] 1996, no writ).

Debtors intended to cause the Judgment Creditors mental anguish when the bodies were improperly used. Rather, the mental anguish suffered by the Judgment Creditors must be something that naturally and ordinarily followed from or which the Debtors could have reasonably anticipated or expected to follow from the intentional acts of embalming without permission. As a matter of law, the Court finds that the injuries suffered by the Judgment Creditors do naturally and ordinarily follow from the Debtors' acts, and the Debtors should have anticipated or expected the injuries notwithstanding the fact that they never intended for the Judgment Creditors to find out what they did with the bodies.[48] Therefore, the policies of Michigan Mutual, ASLIC, Amerisure, Employers', and Guaranty National do not provide coverage for the Judgment Creditors' injuries or the Debtors' liability.

### E. The State Court Jury's Negligence Finding Has No Effect On Coverage

As well as finding that the Debtors acted intentionally, the jury in the State Court Lawsuit found that the Debtors were negligent and grossly negligent. Thus, the issue arises as to whether the Debtors' negligent and grossly negligent acts are covered.

The Fifth Circuit Court of Appeals, applying Texas law, has stated that "where a claim against an insured would not exist 'but for' conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy...."[49]

The jury found that the Debtors acted knowingly in obtaining the bodies and those acts were the producing cause of the damages. Gross negligence was attributed to the clinical embalmings. The plain negligence finding was not attached to any particular acts.

Applying the rule from *Canutillo*, the jury's finding made it clear that none of the injuries would have occurred but for the debtors knowingly obtaining the bodies without permission. That conduct and the resulting damages are not covered. The other conduct was dependent upon conduct which is not covered; therefore it is also not covered.

### F. Conclusion

For the above stated reasons the Court denies the Judgment Creditors' Motion for Summary Judgment, grants the Insurers' Combined Motion for Summary Judgment, and denies the insurance companies' separate motions as moot.

---

**48.** In fact, there are letters in evidence which show that the Debtors were concerned whether the families could discover from a chemical analysis on ashes whether the bodies had been embalmed prior to cremation. Plaintiff's Exhibits 66 & 67 in *Bjerke et al. v. Pierce Mortuary Colleges, et al.*, Cause No. 91–02559–A, in the 14th Judicial District Court of Texas in and for Dallas County. The letters are also contained in Exhibit L in Adversary No. 396–3683 in this Court.

**49.** *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 704 (5th Cir.1996); *see also Commercial Union Ins. Co. v. Roberts, et al.*, 7 F.3d 86, 88 (5th Cir.1993); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 790 (Tex.1982); *Thornhill v. Houston Gen. Lloyds*, 802 S.W.2d 127, 130 (Tex.App.—Fort Worth 1991, no writ).