Affirmed and Opinion filed September
30, 2010

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00263-CV



Victor M.
Zurita, D.D.S., MS, Individually and d/b/a Heights Medical and Dental Clinic
and Ana Zurita, Appellants 

v.

Fernando
Lombana, M.D. and Houston Medical & Dental Center Corp., Appellees 



On Appeal from
the 215th District Court

Harris County, Texas

Trial Court
Cause No. 2001-20157



 

OPINION

            Victor
M. Zurita, individually and doing business as Heights Medical and Dental
Clinic, and his wife Ana Zurita, the plaintiffs below, appeal a take-nothing
judgment on their lawsuit against Fernando Lombana and Houston Medical &
Dental Center Corp., in which they asserted malicious prosecution, tortious
interference, business disparagement, and other claims.  The Zuritas raise
eight issues:  (1) the district court’s self-transfer of the case to the successor
judge was void or reversible error; (2) the court erred in granting summary
judgment on Ana Zurita’s claim of intentional infliction of emotional distress;
(3) the court erred in granting summary judgment on Dr. Zurita’s business-disparagement
and tortious-interference-with-prospective-business-relations claims; (4) the
evidence is legally and factually insufficient to support the jury’s failure to
find malicious civil prosecution; (5) the court erred in directing a verdict on
conspiracy; (6) the court erred in refusing to submit the Zuritas’ requested
jury questions; (7) the court erred in excluding certain evidence as
irrelevant; and (8) the judgment should be reversed and remanded based on
incurable jury argument.  For the reasons stated below, we affirm.

I

            The
proceedings below are extensive and complicated.  The following briefly
summarizes the factual and procedural background between the parties. 
Additional facts will be discussed as needed in the analysis of each issue.

            Victor
Zurita, D.D.S., M.S., is a dentist and owner of a property in the Heights known
as the Yale Street Clinic.  In 1996, Zurita leased a portion of the Yale Street
Clinic’s space to Fernando Lombana, M.D.  In 1999, a dispute arose over the
terms of the lease agreement, and Zurita eventually evicted Lombana.  On
September 30, 1999, Lombana sued Zurita, and Zurita answered and asserted
counterclaims.  The Honorable Martha Hill Jamison of the 164th District Court
was the trial judge.

            Judge
Jamison granted Lombana’s motion for partial summary judgment on liability and
his motion for summary judgment on Zurita’s breach-of-contract counterclaim.  Judge
Jamison also struck as untimely Zurita’s self-described “compulsory
counterclaims” for defamation and tortious interference with business
relationships.  A jury heard the issue of Lombana’s damages and awarded more
than $1.6 million.  Zurita appealed.  In the interim, Lombana took action to
enforce the judgment, including obtaining a temporary restraining order
prohibiting Zurita from transferring assets.  Zurita, unable or unwilling to
file a supersedeas bond, filed for bankruptcy.  According to the record, the
bankruptcy court entered an order allowing the appeal to go forward. 

            The
First Court of Appeals then reversed and rendered judgment in favor of Zurita. 
See Zurita v. Lombana, No. 01-01-01040-CV, 2003 WL 21027140 (Tex.
App.—Houston [1st Dist.] May 8, 2003, pet. denied).  The court’s review was
limited to Zurita’s and Lombana’s motions for summary judgment on liability. 
In particular, the court considered whether Lombana had a right to exercise the
extension option in the lease or whether he had forfeited that right by
subleasing a portion of the premises.  Id. at *3.  Based on the lease’s
extension option, which expressly provided that “[Lombana’s] rights under this
option shall terminate if . . . [Lombana] assigns its interest in the lease or
sublets any portion of the premises,” the court held Lombana was not entitled
to exercise the option after he subleased a portion of the premises to a
pharmacist without Zurita’s written consent.  Id. at *3–4.  The court
reversed the judgment and rendered judgment that Lombana take nothing from
Zurita.  Id. at *4.  Zurita then had the bankruptcy dismissed.

            In
2001, before the jury verdict in the original lawsuit, Zurita filed a separate
action against Lombana and others alleging tortious interference with business
relationships.  This is the lawsuit before us.  Like the first one, this
lawsuit was in Judge Jamison’s court.  Zurita later amended his petition
several times, adding his wife Ana as a party and additional claims.  In 2005, Judge
Jamison granted Lombana summary judgment on several of the Zuritas’ claims, but
denied summary judgment on Dr. Zurita’s malicious-prosecution claim.  Shortly
after that, Judge Jamison recused herself, and in the same order, in her
capacity as administrative judge of the civil trial division, transferred the
lawsuit to another district court.  

            Now
before the Honorable Levi Benton in the 215th District Court, the parties filed
amended motions for summary judgment, and Judge Benton granted Lombana summary
judgment on several of the Zuritas’ claims.  Dr. Zurita then went to trial
before a jury on his remaining claims of malicious prosecution, intentional
infliction of emotional distress, and conspiracy.  The trial court granted a
directed verdict on the civil-conspiracy claim, and the jury answered “no” to
the remaining claims.  Motions for new trial and for judgment n.o.v. were
overruled, and this appeal followed.

II

            In
their first issue, the Zuritas contend Judge Jamison’s transfer of the lawsuit
to Judge Benton is void.  The Zuritas argue that, because Judge Jamison recused
herself, her subsequent transfer of the case to Judge Benton was improper and
in violation of regional administrative rules and Harris County district court
rules.  They contend Judge Jamison was prohibited from taking any further
action in the case, except for good cause, and she should have referred the
case for reassignment by the presiding administrative regional judge.  See
Dunn v. County of Dallas, 794 S.W.2d 560, 563 (Tex. App.—Dallas 1990, no
writ).  They also suggest Judge Jamison recused herself because of
impartiality, personal bias, or personal knowledge of disputed evidentiary
facts concerning the proceeding.  Specifically, the Zuritas point out that she
had presided over the first case involving the lease dispute, which was the
subject of the malicious-prosecution claim in this case, and the Zuritas had
alleged that Lombana and his counsel had obtained the judgment in the first
case through fraud and improper practices.  See Tex. R. Civ. P.
18(b)(2)(a), (b).  They also point to an item in an order granting a motion in limine
prohibiting any “statements, comments, references or inferences that Judge
Jamison was in any way biased in favor of Dr. Lombana” or “that one of Dr.
Lombana’s lawyers utilized a nickname for the judge during the course of the
proceedings” as evidence that “the judge had some sort of personal relationship
with original plaintiff’s counsel.”[1]

            Rule
3.2.5 of the rules of the civil trial division of the Harris County district
courts provides that any case may be transferred from one court to another by
written order of the administrative judge of the division.  Further, Rule 3.2.7
provides that the administrative judge may transfer cases between courts or may
assign cases from one court to another court for hearing due to illness, trial
schedule, “or other sufficient reason.”  Here, Judge Jamison recused herself
and referred the case to “the Administrative Judge of the Civil Trial Division
for transfer to another court.”  Then, in her capacity as administrative judge,
she transferred the case to Judge Benton.  She took no further action in the
case.

            We
conclude that Judge Jamison’s order assigning the case to another judge was not
void.  In reaching this conclusion we are guided by the supreme court’s reasoning
in In re McKee, 248 S.W.3d 164 (Tex. 2007) (per curiam).  As here, the
issue in McKee was the validity of a self-recused judge’s subsequent
assignment of the case as an administrative judge.  Id. at 165.  The
court noted that “Texas Rule of Civil Procedure 18a(c) provides authority for
such an assignment but only if [the judge’s] order states ‘good cause’ for that
action.”  Id.  The court stated that “good cause” is ordinarily inherent
in such administrative assignments.  Id.  Further, the court went on to
determine that it would not issue mandamus absent “extraordinary circumstances”
otherwise requiring the judge’s recusal.  Id.  The court concluded that
the self-recused judge need only revise his order to state that his assignment
was a purely administrative act.  Id. 

            Here,
Judge Jamison’s order specified that she was recusing herself and referring the
case to the administrative judge of the civil trial division for transfer to
another court, and the transfer order is signed by Judge Jamison in her
capacity as administrative judge of the civil trial division.  Thus, it is
apparent on the face of the order that the transfer was a purely administrative
act.  See id.  Further, the record does not reflect any “extraordinary
circumstances” that would have called for Judge Jamison’s recusal.[2]  We
therefore conclude that her order is not void.  

III

            In
their second and third issues, the Zuritas contend the trial court erred in
granting summary judgment on Ana’s intentional-infliction-of-emotional-distress
claim and Dr. Zurita’s business-tort claims.  We address each in turn.

A

            We
review the trial court’s summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  Here, the appellees
moved for summary judgment on both traditional and no-evidence grounds, and the
Zuritas moved for summary judgment only on no-evidence grounds.  See
Tex. R. App. P. 166a(c), 166a(i).  

            The
party moving for a traditional summary judgment has the burden to show that no
material fact exists and that it is entitled to summary judgment as a matter of
law.  Tex. R. App. P. 166a(c); M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  To be entitled to traditional
summary judgment, a defendant must conclusively negate at least one essential
element of each of the plaintiff’s causes of action or conclusively establish
each element of an affirmative defense.  Am. Tobacco Co. v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997).  Evidence is conclusive only if reasonable
people could not differ in their conclusions.  City of Keller v. Wilson,
168 S.W.3d 802, 816 (Tex. 2005).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact.  Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995).

            In
a no-evidence summary judgment, the movant must specifically state the elements
as to which there is no evidence.  Rivers v. Charlie Thomas Ford, Ltd.,
289 S.W.3d 353, 357–58 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Walker
v. Thomasson Lumber Co., 203 S.W.3d 470, 473–74 (Tex. App.—Houston [14th
Dist.] 2006, no pet.).  The trial court must grant the motion unless the
non-movant can point out evidence that raises a fact issue on the challenged
elements.  See Tex. R. Civ. P. 166a(i); Hamilton v. Wilson, 249
S.W.3d 425, 426 (Tex. 2008).  

            In
reviewing either a no-evidence or traditional summary-judgment motion, we must
take as true all evidence favorable to the non-movant and draw every reasonable
inference and resolve all doubts in favor of the non-movant.  Mendoza v.
Fiesta Mart, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet.
denied).  When both parties move for summary judgment, each party bears the
burden of establishing that it is entitled to judgment as a matter of law. 
City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000). 
When the trial court grants one motion and denies the other, we review the
summary judgment evidence presented by both parties and determine all questions
presented.  Id.  The reviewing court should render the judgment that the
trial court should have rendered or reverse and remand if neither party has met
its summary judgment burden.  Id. 

B

            In
their second issue, the Zuritas contend the trial court erred in granting
summary judgment on Ana’s intentional-infliction-of-emotional-distress claim because
the appellees failed to conclusively prove their affirmative defense of
limitations.  See Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999) (stating that a defendant moving for summary judgment on the
affirmative defense of limitations has the burden to conclusively establish
that defense).  Additionally, the Zuritas also claim the allegedly tortious
conduct was a continuing tort.  See Twyman v. Twyman, 790 S.W.2d 819,
821 (Tex. App.—Austin 1990), rev’d on other grounds, 855 S.W.2d 619
(Tex. 1993) (stating that a continuing tort involves a course of conduct which
over a period of years causes injury).[3] 
In its order, the trial court specifically found that “Dr. Lombana’s actions do
not constitute a continuing tort.  Only acts occurring during the relevant
statute of limitations period maybe maintained.”  Further, the court granted
summary judgment “as to all causes of action for which the statute of
limitations expired prior to their filing, including all claims asserted by Ana
Zurita.”[4] 


1

            To
prevail on a claim for intentional infliction of emotional distress, a
plaintiff must establish that (1) the defendant acted intentionally or
recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused
her emotional distress; and (4) the emotional distress was severe.  Kroger
Tex. Ltd. P’ship v. Suberu, 216 S.W.3d 788, 796 (Tex. 2006); Tiller v.
McLure, 121 S.W.3d 709, 713 (Tex. 2003) (per curiam).  An action that is
intentional, malicious, or even criminal does not, standing alone, mean that it
is extreme or outrageous for purposes of intentional infliction of emotional
distress.  Brewerton v. Dalrymple, 997 S.W.2d 212, 215–16 (Tex. 1999). 
The conduct must be “so outrageous in character, and so extreme in degree, as
to go beyond all possible bounds of decency, and to be regarded as atrocious,
and utterly intolerable in a civilized community.”  Id. at 216.  It is
for the court to determine in the first instance whether the defendant’s
conduct may reasonably be regarded as so extreme and outrageous as to permit
recovery.  Id. 

            Under
Texas law, an intentional-infliction-of-emotional-distress claim must be
brought within two years from the date the cause of action accrued.  See
Tex. Civ. Prac. & Rem. Code Ann. § 16.003; Bhalli v. Methodist Hosp.,
896 S.W.2d 207, 211 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  Generally,
a cause of action accrues when a wrongful act causes an injury.  Childs v.
Haussecker, 974 S.W.2d 31, 36 (Tex. 1998).  The continuing-tort doctrine is
an exception courts of appeals have used to toll limitations until the last act
of intentional infliction occurs.  See Creditwatch, Inc. v. Jackson, 157
S.W.3d 814, 816 n.8 (Tex. 2005) (noting that the supreme court has neither
endorsed nor addressed the continuing-tort doctrine).  It applies to tortious
acts inflicted over a period of time and repeated until desisted, and each day
creates a separate cause of action.  Two Pesos, Inc. v. Gulf Ins. Co.,
901 S.W.2d 495, 500 (Tex. App.—Houston [14th Dist.] 1995, no writ); W.W.
Laubach Trust/The Georgetown Corp., 80 S.W.3d 149, 159 (Tex. App.—Austin
2002, pet. denied).  The doctrine only applies, however, if the last tortious
act falls within the limitations period.  Bhalli, 896 S.W.2d at 212.

2

            Ana
joined Dr. Zurita’s lawsuit in March 2004 asserting that the appellees’ actions
caused her to suffer a miscarriage.  Ana testified that she miscarried in July
2001, more than two years before she asserted her claim.  The Zuritas contend
Ana’s claim is not barred, however, because the appellees’ conduct constitutes
a continuing tort that tolls the statute of limitations.  The Zuritas contend the
evidence showed “death threats to the Zurita family, trespass onto and
vandalism of their lake house, and oppressive extended litigation brought in
bad faith [and] continuing through issuance of mandate 12/8/03.”  

            On
this record, we decline to apply the continuing-tort doctrine to Ana’s claim.  We
need not determine whether the alleged instances of death threats, trespass,
and vandalism constitute a continuing tort, because even if they did, there is
no evidence that any of these alleged acts occurred within two years of the
date Ana first asserted her claim.  See Bhalli, 896 S.W.2d at 211–12.  

            Further,
the appellees’ prosecution of the original lawsuit does not constitute evidence
of a continuing tort that continued through the issuance of mandate as the
Zuritas contend.  Conduct associated with asserting a legal right, such as
bringing a lawsuit, cannot be extreme and outrageous.  See Klein &
Assocs. Political Relations v. Port Arthur Indep. Sch. Dist., 92 S.W.3d
889, 898 (Tex. App.—Beaumont 2002, pet. denied) (holding that, as a matter of
law, school district’s lawsuit did not constitute extreme and outrageous
conduct sufficient to support a cause of action for intentional infliction of
emotional distress even though suit had no merit); cf. Wornick Co. v.
Casas, 856 S.W.2d 732, 735 (Tex. 1993) (defendant’s exercise of its legal
right to terminate at-will employee cannot constitute outrageous conduct as a
matter of law).  Therefore, the appellees met their summary judgment burden to
demonstrate that Ana’s claim is barred by the statute of limitations as a
matter of law.[5]

            We
overrule the Zuritas’ second issue.

C

            In
their third issue, the Zuritas contend the court erred in granting summary
judgment on Dr. Zurita’s business-disparagement and tortious-interference-with-prospective-business-relations
claims (the “business torts”).  The trial court granted the appellees’
traditional and no-evidence motions for summary judgment on all grounds
asserted with respect to the business torts.  Because we conclude that the
trial court properly granted summary judgment on the ground of res judicata, we
do not reach the other asserted grounds.

1

            Res
judicata is an affirmative defense.  Tex. R. Civ. P. 94.  The party claiming
the defense must prove: (1) the claims asserted in this case arise out of the
same subject matter of the previous suit; (2) the claims asserted in this suit
were litigated or could have been litigated through the exercise of due
diligence in the previous suit; and (3) there is a final judgment in the prior
lawsuit.  Barr v. Resolution Trust Corp., 837 S.W.2d 627, 631 (Tex.
1992).  We apply a transactional approach to res judicata.  Id.  Under
that approach, the subject matter of a suit is based on the factual matters
that make up the gist of the complaint.  Id. at 630.  Any claim that
arises out of those facts should be litigated in the same lawsuit.  Id. 

2

            In
the original lawsuit, on October 30, 2000, Zurita filed a “First Amended
Original Answer and First Amended Compulsory Counterclaim” in which he sought
to add two defendants and to assert claims of tortious interference with a
business relationship and defamation in addition to a previously asserted
compulsory counterclaim for breach of contract.  Both claims were based in part
on a September 25, 1999 letter Lombana sent to patients stating, “The new
Clinic offers better DENTAL services with very well qualified and specialized
certified dentists.”  The appellees moved to strike this pleading, asserting among
other things that it was an untimely attempt to add new parties and claims
before the December 4, 2000 trial setting.  The trial court granted the
appellees’ motion and struck the pleading.  The case then proceeded to a jury
verdict and judgment for the appellees.  As discussed above, the First Court of
Appeals reversed the judgment and rendered a take-nothing judgment in favor of
Zurita.  In this lawsuit, the Zuritas alleged claims of business disparagement
and tortious interference with prospective business relations.  Like the
compulsory counterclaims in the first lawsuit, both of these claims were based
on the appellees’ September 25, 1999 letter.  The appellees moved for summary
judgment, arguing that these claims arose out of the same facts and
circumstances as the compulsory counterclaims asserted in the first lawsuit and
therefore were barred by res judicata.

            On
appeal, the Zuritas contend that the underlying judgment should have no
preclusive effect because it was reversed.  As support, the Zuritas rely on J.J.
Gregory Gourmet Services, Inc. v. Antone’s Import Co., 927 S.W.2d 31 (Tex.
App.—Houston [1st Dist.] 1995, no writ).  In J.J. Gregory Gourmet Services,
the court stated that res judicata did not apply when the underlying summary
judgment granted in favor of the defendants was reversed on appeal.  Id.
at 34.  In that case, however, the summary judgment was reversed and remanded,
and the court simply recognized that a summary judgment that is reversed and
remanded is not a final judgment.  Id.  In contrast, in the present case
the court of appeals reversed and rendered a final judgment in favor of
Zurita.  Thus, a final judgment exists for purposes of res judicata.

            The
Zuritas also invite us to decline to apply res judicata based on equity, citing
Citizens Ins. Co. v. Daccach, 217 S.W.3d 430 (Tex. 2007), and Finger
v. Southern Refrigeration Services, Inc., 881 S.W.2d 890, 895–96 (Tex.
App.—Houston [1st Dist.] 1994, writ denied) (op. on reh’g).  The Zuritas cite Daccach
for the proposition that res judicata prevents relitigation of adjudicated
claims and related matters that with the use of diligence should have been
litigated.  Daccach, 217 S.W.3d at 449.  But the Zuritas’ reliance on
this general language is misplaced.  In Daccach, a class representative
argued res judicata should not apply to claims he abandoned because they were
procedurally barred from litigation in the class action and thus could not be
“litigated through diligence” in that action.  Id. at 451.  The supreme
court, however, refused to create such an exception to the general principles
of res judicata.  Id. at 455.  Daccach does not assist the
Zuritas because it simply reaffirms the supreme court’s adherence to the
pragmatic application of the transactional approach to res judicata.  

            Finger
v. Southern Refrigeration Services, Inc. is also distinguishable.  In
that case, the court discussed the application of collateral estoppel, not res
judicata.  See Finger, 881 S.W.2d at 895.  Noting that “[t]he doctrine
of collateral estoppel applies only to issues actually litigated in the earlier
proceeding,” the court held that collateral estoppel did not bar the claims of
a plaintiff against whom the trial court had erroneously granted a directed
verdict.  Id. at 895–96.  The court went on to state, “[e]ven if
collateral estoppel applied in this case, we have the discretion to refuse to
apply it if it would be unfair.”  Id. at 896 (citing Scurlock Oil Co.
v. Smithwick, 724 S.W.2d 1, 7 (Tex. 1986)).  We decline to extend Finger
to the broader doctrine of res judicata, which applies not only to claims that
were actually litigated, but to claims that could have been litigated though
the exercise of  diligence in the earlier suit.  See Barr, 837
S.W.2d at 631.  

            Although
we have found no case directly on point, courts in analogous circumstances have
upheld the application of res judicata to bar claims a party failed to
diligently pursue.  For example, in Weiman v. Addicks-Fairbanks Road Sand Co.,
846 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1992, writ denied), the
appellant contended res judicata did not bar her claims in a second lawsuit
because she was granted a non-suit without prejudice on similar claims in an
earlier lawsuit.  Id. at 421.  This court disagreed, and held that the
rules of procedure nevertheless applied and her claims in the second suit were
barred by the compulsory-counterclaim rule.  Id.  Similarly, in Genecov
Group, Inc. v. Roosth Production Co., 144 S.W.3d 546 (Tex. App.—Tyler 2003,
pet. denied), Genecov sought a declaration that certain oil and gas leases were
valid and that it, rather than Roosth, was the lawful operator of the gas
unit.  Id. at 548.  The parties agreed to arbitrate the question of whether
the leases were valid, but the arbitrators were not asked to determine which
party was the lawful operator.  Id.  After the arbitration was
completed, Genecov filed a second lawsuit against Roosth, asking the court to
find Genecov to be the lawful operator of the gas unit and for other relief.  Id.
at 550.  The trial court granted Roosth’s motion for summary judgment on
Genecov’s claims based on res judicata.  Id.  On appeal, the court rejected
Genecov’s contention that it should be able to have its operator issue
determined in the second suit because the arbitrators did not consider it in
the first suit.  Id. at 553.  The court held that res judicata barred Genecov’s
operator issue in the second lawsuit because it was based on the same facts
contained in the first lawsuit.  Id.  

            In
Williams v. National Mortgage Co., 903 S.W.2d 398 (Tex. App.—Dallas
1995, writ denied), the borrowers filed a lawsuit against their lender for
wrongful foreclosure and the lender counterclaimed.  Id. at 400–401. 
The lender later filed a notice of nonsuit, but the trial court mistakenly
dismissed the borrowers’ claims instead of the lender’s counterclaims.  Id.
at 401.  The lender then filed a second counterclaim in the first lawsuit and
was granted summary judgment.  Id.  The borrowers then filed a second
lawsuit against the lender, asserting claims of wrongful foreclosure, trespass
to try title, violations of the DTPA, and breach of the implied duty of good
faith and fair dealing.  Id.  In response, the lender contended the
borrower’s claims in the second suit arose out of the same transaction at issue
in the first suit and were compulsory counterclaims barred by res judicata.  Id. 
After determining that the trial court had subject matter jurisdiction to
render judgment in the first lawsuit, the court of appeals held that the
borrowers’ claims in the second suit were compulsory counterclaims they were
required to refile in the first lawsuit, either after their claims were
dismissed or in response to the lender’s second counterclaims.  Id. at
403–04.  Accordingly, the borrowers were precluded from asserting their
compulsory counterclaims in the second lawsuit.  Id. at 404.

            Therefore,
we conclude that the trial court’s grant of summary judgment on Dr. Zurita’s
business tort claims may be affirmed based on res judicata.

            Next,
the Zuritas contend that their claims in this lawsuit were immature claims that
only accrued post-judgment.  But the Zuritas did not raise this argument in
response to the appellees’ summary-judgment briefing below.[6]  Any issue
which the non-movant claims would justify denying summary judgment must be
included in the response.  McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 341 (Tex. 1993).  An appellate court cannot reverse a summary
judgment based on an issue not presented to the trial court.  State Bd. of
Ins. v. Westland Film Indus., 705 S.W.2d 695, 696 (Tex 1986). Moreover, this
argument ignores the fact that the letter forming the basis of the claims in
this lawsuit is the same September 25, 1999 letter Dr. Zurita alleged was the
basis of his nearly identical claims in the original lawsuit.  Thus, even if
the issue had been raised below, we would disagree that the claims were not
mature during the pendency of the original case.  See Weiman, 846 S.W.2d
at 420 (rejecting appellant’s contention that claims in second suit were not
mature at time of first suit when claims were almost identical to those raised
and non-suited in first suit); see also A&P Transp. Co., Inc., No.
14-09-00729-CV, 2009 WL 3365841, at *2 (Tex. App.—Houston [14th Dist.] Sept.
10, 2009, no pet.) (mem. op.) (“The only deadline imposed by Rule 97(a) for
filing a compulsory counterclaim is prior to final judgment in the initial
action between the parties involving the same transaction or occurrence.”).

            In
their reply brief, the Zuritas further argue that their counterclaims in the
original lawsuit were not, in fact, compulsory counterclaims.[7]  The
Zuritas have waived this issue by failing to raise it in their original
appellate brief.  See Zammarron v. Shinko Wire Co., Ltd., 125 S.W.3d
132, 139 (Tex. App.—Houston [14th Dist.] 2003 pet. denied) (stating that issues
not raised until a reply brief are waived).  Therefore, we do not consider the
argument that the claims were not compulsory and thus not required to be
asserted in the original lawsuit.  

            We
therefore overrule the Zuritas’ third issue.

IV

            In
their fourth and seventh issues, the Zuritas contend the evidence is legally
and factually insufficient to support the jury’s failure to find malicious
civil prosecution, and the trial court erred in excluding as irrelevant
evidence of the manner in which the underlying lease dispute was prosecuted.  Because
the Zuritas address the exclusion of evidence within their sufficiency
argument, we will also address them together. 

            To
prevail in a suit alleging malicious prosecution of a civil claim, Zurita was
required to establish: (1) the institution or continuation of civil proceedings
against the plaintiff; (2) by or at the insistence of the defendant; (3) malice
in the commencement of the proceeding; (4) lack of probable cause for the
proceeding; (5) termination of the proceeding in his favor; and (6) special
damages.  Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 207 (Tex.
1996).

            When
conducting a legal-sufficiency review, we must view the evidence in the light
most favorable to the jury’s findings, crediting favorable evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable
jurors could not.  City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.
2005).  A party attacking the legal sufficiency of an adverse finding on an
issue on which he has the burden of proof must demonstrate that the evidence
conclusively establishes all vital facts in support of the issue.  Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  In reviewing a factual-sufficiency
challenge, we consider and weigh all the evidence in a neutral light and may
set aside the finding only if the evidence is so weak or the finding is so
against the great weight and preponderance of the evidence that it is clearly
wrong and unjust.  Id. at 242.

            We
review a trial court’s decision to admit or to exclude evidence for an abuse of
discretion.  In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005).  A trial
court abuses its discretion in admitting or excluding evidence if it acts
without reference to any guiding rules and principles, or if the act complained
of is arbitrary and unreasonable.  Carpenter v. Cimarron Hydrocarbons Corp.,
98 S.W.3d 682, 687 (Tex. 2002).  We must uphold a trial court’s evidentiary
ruling if there is any legitimate basis in the record to support it.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  We will not
reverse a trial court for an erroneous evidentiary ruling unless the error was
reasonably calculated to cause and probably did cause the rendition of an
improper judgment.  See Tex. R. App. P. 44.1.

            The
Zuritas contend the jury’s refusal to find Lombana maliciously prosecuted the
case is legally and factually insufficient because no reasonable person would
believe there could be a recovery given the facts as “honestly and reasonably
believed” before Lombana filed suit in 1999.  See Kroger Tex. Ltd. P’ship v.
Suberu, 216 S.W.3d 788, 792–73 (Tex. 2006) (stating in context of criminal
malicious prosecution that the probable cause element asks whether a reasonable
person would believe a crime had been committed given the facts as the
complainant honestly and reasonably believed them to be before the criminal
proceedings were instituted).  Specifically, the Zuritas argue that Lombana
knew or reasonably should have known that the lease had terminated, and therefore
he lacked probable cause for his suit for breach of contract based on Zurita’s
refusal to honor the lease’s renewal option.  The Zuritas maintain that
Lombana’s lawsuit was instead to retaliate for Zurita’s eviction of Lombana.  To
support their contention that the evidence conclusively demonstrates Lombana
had no probable cause to prosecute the underlying lawsuit, the Zuritas rely on Masterson
v. Pig’N Whistle Corp., 326 P.2d 918 (Cal. Dist. Ct. App. 1958).  In that
case, the court affirmed a judgment in favor of the plaintiffs in a malicious-prosecution
suit, holding as a matter of law there was no probable cause for the underlying
breach of contract action when the undisputed evidence showed that the
defendants had no reasonable grounds to support their interpretation of an
option contained in the parties’ contract.  Id. at 927.  We conclude,
however, that Masterson does not control the disposition of this issue. 

            In
Masterson, Pig’N Whistle sued Masterson and others for breach of
contract, arguing that their contract gave Pig’N Whistle an option to renew its
sponsorship of a television program indefinitely.  See id. at 923.  The
trial court disagreed and found in favor of Masterson.  Id.  Masterson
and the others then brought a malicious-prosecution suit against Pig’N Whistle
and its officers and directors, and prevailed at trial.  Id. at 924–26. 
On appeal, the court determined that there were no disputed issues of fact on
the probable-cause element, and held that there was no probable cause as a
matter of law, noting “[i]t was an inescapable conclusion from the evidence
that the officers of Pig’N Whistle had no reasonable grounds for believing that
the corporation had an option to sponsor the program for a third cycle of
broadcasts” as the contract “expressly provide[d] for but a single option.”  Id.
at 927.  

            The
present case is distinguishable from Masterson because there was
considerable dispute about the facts and circumstances surrounding the parties’
interpretation of the lease, and Lombana initially prevailed and obtained a
judgment in his favor after the trial court rejected the Zuritas’
interpretation of the contract.  When determining whether probable cause
exists, “the question is not what the facts actually were, but rather what the
defendant honestly and reasonably believed the facts to be.” Metzger v.
Sebek, 892 S.W.2d 20, 42 (Tex. App.—Houston [1st Dist.] 1994, pet. denied).
Therefore, we cannot say as a matter of law Lombana could not have reasonably
believed he could recover, as he did recover, at least at the trial level.[8]  

            Conversely,
Lombana contends the judgment in his favor below demonstrates probable cause as
a matter of law, even though the judgment was reversed on appeal.  See Lancaster
& Love, Inc. v. Mueller Co., 310 S.W.2d 659, 663 (Tex. Civ. App.—Dallas
1958, writ ref’d) (stating that “[e]ven though the judgment is subsequently set
aside, and the final trial results in favor of the party now plaintiff, the
recovery in the first instance has been held conclusive on the question of the
presence of probable cause.”); see also Metzger, 892 S.W.2d at 43
(holding that appellees were entitled to directed verdict on appellant’s claim
for malicious prosecution when probable cause was shown even though criminal
charges were dismissed); Adcox v. Safeway Stores, Inc., 512 F. Supp.
452, 453–54 (N.D. Tex. 1980) (holding conviction in underlying criminal action
conclusively demonstrated probable cause even though it was dismissed on
appeal).

            But
the Zuritas also contend that they alleged that Lombana engaged in improper and
fraudulent acts in prosecuting the underlying lease dispute which prejudiced
the Zuritas.  See Lancaster & Love, Inc., 310 S.W.2d at 663
(noting that some cases have held that the underlying favorable judgment may be
“impeached by proof that it was obtained by fraud or perjury”).  Consequently,
they urge, their “manner of prosecution” evidence was relevant to rebut the
presumption of probable cause.  

            In
addition to the lease itself, the Zuritas point to (1) testimony by one of
Lombana’s lawyers in the underlying lease dispute that Lombana did not disclose
the existence of a pharmacy sublease and that the lawyer’s opinion concerning
the exercise of the option would have changed if he knew about the sublease as
he would have questioned whether the sublease caused the option to terminate, and
(2) testimony by Lombana that he told the lawyer he had not sublet any portion
of the premises without permission and could not recall if he gave the lawyer a
copy of the sublease.  They also point to a defense exhibit consisting of
Lombana’s response to Zurita’s motion for summary judgment in the underlying
case and Lombana’s attached affidavit in which he states that he “never
received any notice of an alleged subleasing default” from Zurita.  The Zuritas
claim this exhibit demonstrates that Zurita “may not have known of sublease and
would have to have given notice of default, in effect admitting sublet without
consent.”  

            Although
such evidence may raise a fact issue to rebut the presumption of probable cause
in other circumstances, on the facts of this case it is no evidence that the
judgment was procured by fraud, perjury, or other improper practices.  In the
underlying lease dispute, the trial court determined Zurita’s liability on competing
motions for summary judgment on breach of contract, leaving for the jury only
the issue of damages.  See Zurita v. Lombana, 2003 WL 21027140, at *2. 
Lombana argued that he had validly exercised the lease option and Zurita argued
that Lombana had no right to extend the term of the lease because his rights to
exercise the extension option had terminated when he subleased a portion of the
premises to a pharmacist.  Id.  Thus, issue of the existence of the
sublease was before the trial court as well as the argument that there was no
written consent for the sublease.  The trial court considered the parties’
differing interpretations of the lease and determined the issue adversely to
Zurita.  Id.  The evidence the Zuritas point to would not have altered this
outcome in any way.  Indeed, their supporting evidence includes a
summary-judgment response from that case, which the trial court presumably
would have considered.  Therefore, Lombana has established the existence of
probable cause as a matter of law based on the favorable judgment in the
underlying lease dispute, even though it was reversed on appeal.  See Lancaster
& Love, 310 S.W.2d at 663; Metzger, 892 S.W.2d at 43; Adcox
v. Safeway Stores, Inc., 512 F. Supp. at 453–54.

            The
Zuritas also contend that additional “manner of prosecution” evidence was
relevant to rebut the presumption that a favorable judgment below conclusively
establishes the existence of probable cause, but the trial court erroneously
excluded it.  Specifically, they point to portions of the record in which their
counsel attempted to elicit testimony concerning whether Lombana’s damages
expert—an accountant who had worked for both Lombana and Zurita—was told by one
of Lombana’s attorneys that Zurita had waived any conflict of interest when he
had not.[9] 
Presumably, the accountant would not have testified in the underlying lease
dispute concerning Lombana’s damages without a waiver from Zurita.  The trial
court repeatedly sustained Lombana’s counsel’s objections that the testimony
sought was irrelevant.  The Zuritas contend this evidence was not cumulative
and its admission probably would have resulted in a different verdict.  

            Here,
however, we cannot say that the trial court abused its discretion in excluding
testimony concerning whether Lombana’s lawyers mislead his damages expert to
obtain his testimony in the underlying case.  This evidence, like much of the
other “manner of prosecution” evidence the Zuritas complain about, is directed
to sharp practices Lombana’s attorneys allegedly used in the underlying
lawsuit.  Such evidence, if true, may support an action for sanctions in the underlying
case, but it is generally not evidence supporting a malicious prosecution
suit.  Other than their cursory statements, the Zuritas make no argument and
cite no authorities to support their contention that this kind of evidence is
relevant in a malicious prosecution case.  Even if we were to conclude that the
evidence was relevant and the trial court erred in excluding it, the Zuritas
have not shown that the error was harmful.  See Tex. Dept. of Transp. v.
Able, 35 S.W.3d 608, 617 (Tex. 2000).  

            We
therefore overrule the Zuritas’ fourth and seventh issues.[10]

V

            In
their fifth issue, the Zuritas contend the trial court erred in directing a
verdict on conspiracy.  They cite Likover v. Sunflower Terrace, II, Ltd.,
696 S.W.2d 468 (Tex. App.—Houston [1st Dist.] 1985, no writ), for the
proposition that an attorney can be liable if he knowingly participates in a
conspiracy and contend that Dr. Lombana’s continuation of the underlying lease
dispute after Dr. Zurita filed “dispositive motions” asserting that the
sublease terminated the option constitutes more than a scintilla of evidence to
preclude a directed verdict.

            A
trial court may instruct a verdict in favor of a defendant if no evidence of
probative force raises a fact issue on the material questions in the suit.  See
Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77
(Tex. 2000).  A directed verdict in favor of a defendant may be proper when (1)
a plaintiff fails to present evidence raising a fact issue essential to the
plaintiff’s right of recovery or (2) the plaintiff admits or the evidence
conclusively establishes a defense to the plaintiff’s cause of action.  See
id.  We review the trial court’s granting of a directed verdict by
following the same standard for assessing legal sufficiency of the evidence.  Mathis
v. Restoration Builders, Inc., 231 S.W.3d 47, 50 (Tex. App.—Houston [14th
Dist.] 2007, no pet.).  We review the entire record in the light most favorable
to the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  City of Keller v. Wilson, 168 S.W.3d at 824.  

            To
establish civil conspiracy, the Zuritas were required to establish the
following elements:  (1) two or more persons; (2) an object to be accomplished;
(3) a meeting of the minds on the object or course of action; (4) one or more
unlawful overt acts; and (5) damages as a proximate result.  See Tri v.
J.T.T., 162 S.W.3d 552, 556 (Tex. 2005).  Because conspiracy is a
derivative tort, the Zuritas must show that Dr. Lombana was also liable for
some underlying tort to prevail.  See Rodarte v. Investeco Group, L.L.C.,
299 S.W.3d 400, 413 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Baty v.
ProTech Ins. Agency, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.]
2001, pet. denied). 

            The
evidence the Zuritas point to consists of Dr. Lombana’s testimony concerning
his instructions to and reliance on his lawyers in the underlying lease
dispute.  The Zuritas do not explain how this testimony raises a fact issue on
any of the required elements of conspiracy, much less all of them.  Further,
the Zuritas argued below that the underlying tort supporting the conspiracy
claim was malicious prosecution.  We have already held that the Zuritas cannot
prevail on their malicious-prosecution claim as a matter of law.  

            We
therefore overrule the Zuritas’ fifth issue.

VI

            In
their eighth issue, the Zuritas contend the judgment should be reversed and
remanded based on incurable jury argument.  Specifically, they complain that during
closing argument, Dr. Lombana’s attorney repeatedly called Dr. Zurita a liar.  The
offending argument includes references to an originally privileged letter Dr.
Zurita wrote to the medical board that appears to contradict his position in
the underlying lease dispute and the Zuritas’ wealth.[11]  

            Incurable
jury argument is rare.  Living Ctrs. of Tex., Inc. v. Penalver, 256
S.W.3d 678, 681 (Tex. 2008).  For an argument to be considered incurable, the
complaining party must not have invited or provoked the improper argument.  Id.
at 680.  Incurable jury argument exists when the argument is so prejudicial or
inflammatory that an instruction to the jury to disregard cannot eliminate the
harm.  Clark v. Bres, 217 S.W.3d 501, 509 (Tex. App.—Houston [14th
Dist.] 2006, pet. denied).  The party claiming incurable harm must persuade the
court that, based on the record as a whole, the offensive argument was so
extreme that a “juror of ordinary intelligence could have been persuaded by
that argument to agree to a verdict contrary to that to which he would have
agreed but for such argument.”  Phillips v. Bramlett, 288 S.W.3d 876, 883
(Tex. 2009).  

            Instances
of incurable jury argument include appeals to racial prejudice; the use of
inflammatory epithets such as “liar,” “fraud,” “faker” “cheat,” and “imposter”;
and unsupported charges of perjury.  See Standard Fire Ins. Co. v. Reese,
584 S.W.2d 835, 840 (Tex. 1979).  But a litigant is entitled to have his
counsel argue the facts of the case to the jury.  Clark, 271 S.W.3d at
510.  Trial counsel may properly discuss the reasonableness of the evidence as
well as the probative effect or lack thereof, of the evidence.  Id. 
Trial counsel should be allowed wide latitude in arguing the evidence and the reasonable
inferences from the evidence to the jury.  Id.

            Here,
Lombana’s attorney argued that Zurita lied when discussing the evidence before
the jury.  Arguing based on evidence in the record is proper and is the purpose
of closing argument.  Id. (citing Tex. Sand Co. v. Shield, 381
S.W.2d 48, 58 (Tex. 1964).  As noted above, much of the argument was directed
to a letter, which Lombana’s attorney deemed “the smoking gun,” that was
admitted into evidence as a prior inconsistent statement.  This letter arguably
reflected that Zurita knew of and approved Lombana’s sublease to the
pharmacist, Mobli, contrary to the position Zurita took in the underlying lease
dispute and in the present case.  Although the Zuritas complain that Lombana’s
counsel mischaracterized the letter and used it to confuse the jury, the jury
was entitled to consider both parties’ positions concerning the meaning and
import of the letter’s contents, and Lombana’s attorney was likewise entitled
to discuss this and other matters in evidence.  See id.  

            The
Zuritas also complain that Lombana’s attorney improperly injected wealth into
his argument, citing Reliance Steel & Aluminum Co. v. Sevcik, 267
S.W.3d 867 (Tex. 2008).  In Reliance Steel, the supreme court held that
it was improper for the plaintiffs in a negligence case to tender evidence of
the defendant’s wealth when punitive damages were not at issue.  Id. at
869–70.  Reliance Steel is distinguishable because the present case does
not involve the improper admission of a defendant’s relative wealth; instead,
Lombana’s attorney discussed evidence of the Zuritas’ wealth in the context of
their voluntary bankruptcy, which was directly relevant to their claims and
damages.  The argument was not improper because it was based matters in evidence.
 See Clark, 271 S.W.3d at 510.

            Thus,
based on the record as a whole, the argument by Lombana’s attorney was not so
extreme that a juror might have been persuaded to agree with a verdict contrary
to that which the juror would have adopted but for the argument.  See
Bramlett, 288 S.W.3d at 883.  Nor did these comments strike at the very
core of the judicial process.  See id.  Therefore, we hold that the
argument was not incurable.  

            We
overrule the Zuritas’ eighth issue.

 

 

*
* *

            We
overrule the Zuritas’ issues and affirm the trial court’s judgment.  

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

 

Panel
consists of Chief Justice Hedges and Justices Seymore and Brown                             









[1]
In their reply brief, the Zuritas make an additional argument that Judge
Jamison should have been disqualified under the Texas Constitution and Due
Process Clause of the Fourteenth Amendment.  See U.S. Const. amend. XIV; Tex.
Const. art. V, §§ 7, 11; see also Tex. R. Civ. P. 18b(1). 
Constitutional disqualification can be raised at any point in the proceeding.  Buckholts
Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 148 (Tex. 1982).  The Zuritas
contend Judge Jamison’s participation in the earlier case, which became the
subject of the Zuritas’ malicious prosecution claim, evinced “the probability
of actual bias . . . [that] is too high to be constitutionally tolerable.”  Caperton
v. A.T. Massey Coal Co., Inc., 129 S. Ct. 2252, 2259 (2009).  We conclude,
however, that the record does not reflect an unconstitutional potential for
bias of the type that concerned the court in Caperton, see id. at
2262–64, or that the requirements for constitutional disqualification were
met.  See McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex. App.—Houston
[1st Dist.] 1995, pet. denied) (identifying sole grounds for constitutional
disqualification which cannot be waived). 





[2]
Moreover, recusal may be waived if it is not raised by a proper motion.  McElwee,
911 S.W.2d at 186.  The Zuritas complain they had no notice that Judge Jamison
selected Judge Benton, but the complained-of order was in the court’s file, and
the Zuritas certainly were aware that Judge Jamison had served as the judge in
the earlier case upon which their malicious-prosecution claim was based.  The
Zuritas never moved to recuse Judge Jamison for any perceived bias,
impartiality, or other reason until after the case had been tried to an adverse
result before Judge Benton.  Therefore, the Zuritas have waived any complaint
that Judge Jamison should have been recused, and have likewise waived any
complaint regarding her assignment of the case to Judge Benton.  





[3]
The Zuritas also appear to request that the summary judgment be reversed and
remanded because the “record is in disarray.”  But the Zuritas make no argument
and cite no authority to support this request.  Instead, they refer this court
to a motion incorporated by reference.  A party may not simply incorporate by
reference its arguments at the trial level into its brief; a party must argue
each claim of error on appeal.  Allen v. United of Omaha Life Ins. Co.,
236 S.W.3d 315, 325 (Tex. App.—Fort Worth 2007, pet. denied); Guerrero v.
Tarrant County Mortician Servs. Co., 977 S.W.2d 829, 832–33 (“Were we to
approve of this tactic, appellate briefs would be reduced to a simple appellate
record reference to a party’s trial court arguments.  Additionally, this would
be an open door for parties to circumvent the appellate brief page
limitations.”).  Therefore, the Zuritas have waived this request.





[4]
The summary-judgment order disposing of Ana’s intentional-infliction-of
emotional-distress claim was signed December 20, 2005, by Judge Jamison.  After
the case was transferred to Judge Benton, the parties amended their motions for
summary judgment and Judge Benton ruled on them on February 2, 2007.  Judge
Benton’s order included the following in a footnote:  “The December 20, 2005
order issued by the 164th District Court unequivocally disposes of
all claims asserted by Mrs. Ana Zurita.”





[5]
Even if we were to accept the allegation that the original lawsuit constituted
malicious prosecution, Lombana’s prosecution of that lawsuit and the alleged
threat, trespass, and vandalism  are distinct and unrelated acts that do not
constitute a continuing course of conduct.  Compare Upjohn Co. v. Freeman,
885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied) (continued use of an
injury-producing medication may be a continuing tort); Twyman v. Twyman,
790 S.W.2d 819, 821 (Tex. App.—Austin 1990), rev’d on other grounds,
855, S.W.2d 619 (Tex. 1993) (husband repeatedly coerced wife over extended
period to engage in sexual bondage activities); with Tex. Disposal
Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 587–88
(Tex. App.—Austin 2007, pet. denied) (communications that were intermittent and
irregular in nature did not represent a constant, continuous pattern of
tortious conduct); Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78, 86–87
(Tex. App.—Fort Worth 2003, pet. denied) (holding discrete acts of alleged
discrimination did not constitute a continuing tort).  Thus, the Zuritas
presented no summary-judgment evidence raising a genuine issue of material fact
concerning their continuing-tort theory.





[6]
In their reply brief, the Zuritas contend they argued below that their
counterclaims in the earlier lawsuit were not compulsory counterclaims.  But
that argument was made in a response to a motion to dismiss which the appellees
filed shortly after the Zuritas filed this lawsuit, not in response to the
appellees’ summary-judgment motions.  





[7]
In relevant part, Rule 97(a) of the Texas Rules of Civil Procedure provides
that a compulsory counterclaim is “any claim within the jurisdiction of the
court, not the subject of a pending action, which at the time of filing the
pleading the pleader has against any opposing party, if it arises out of the
transaction or occurrence that is the subject matter of the opposing party's
claim and does not require for its adjudication the presence of third parties
of whom the court cannot acquire jurisdiction.”  Tex. R. Civ. P. 97(a).





[8]
We also note that in Zurita v. Lombana, the First Court of Appeals
explained it did not consider Lombana’s argument that Zurita was aware of and
ratified the sublease, because Lombana did not plead or urge ratification as a
ground for summary judgment.  2003 WL 21027140, at *3 n.5.  Instead, the court
decided only whether, based on the express terms of the lease, Lombana had a
right to extend the lease.  Id.  In the present action, the parties
presented conflicting evidence to the jury on the issue of whether Zurita was
aware of the sublease.  The jury was entitled to consider this in concluding
Lombana did not maliciously prosecute the underlying lease dispute. 





[9]
The Zuritas also appear to contend that the trial court erred in excluding some
deposition testimony from one of Lombana’s original lawyers that Lombana had
said his practice had been unprofitable.  Similar evidence was elicited from
Inez Romero, who had worked for Lombana as a nurse’s assistant for eleven
years.  Romero testified that Lombana would say that the clinic was “dead” and
he was not interested in maintaining it.  She also testified that Lombana did
not have a reasonable number of patients, and he almost “never showed up” at
the clinic.  She also stated that Lombana “wanted to sue Dr. Zurita because the
clinic where he was at there were no patients.”  The Zuritas contend Lombana’s
lawyer’s “confirming” testimony “with regard to unprofitable practice” was
relevant to both probable cause and malice.  Even if we assume the trial court
erred, however, we will not reverse a judgment for an erroneous ruling if the
evidence in question is cumulative.  Interstate Northborough P’ship v. State,
66 S.W.3d 213, 220 (Tex. 2001).





[10]
Because of our disposition of these issues, we do not reach the Zuritas’ sixth
issue concerning the trial court’s refusal to submit requested jury
instructions for the malicious-prosecution charge.





[11]
Dr. Zurita waived the attorney-client privilege to enable his former lawyer to
testify concerning the contents of his file.