Ronald J. FINGER, Appellant,

v.

SOUTHERN REFRIGERATION SERVICES, INC., Appellee.

No. 01–92–01084–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 28, 1994.

Opinion Supplementing Opinion on Rehearing Aug. 31, 1994.

Robert C. Tarics, Michael Branisa, Houston, for appellant.

Barry G. Flynn, Jeffrey B. Frey, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This case involves a suit to recover damages for a subrogation interest. The trial court directed a verdict against one of the plaintiffs, and submitted the rest of the case to the jury. After the jury found the defendant was not negligent, the trial court rendered a take-nothing judgment for the plaintiffs. We reverse and remand for a new trial.

Ronald J. Finger, one of the plaintiffs, appeals from the directed verdict granted against him.[1] The suit was brought in the name of the owner of the property, Ronald J. Finger, and the leaseholder, Monterey House, against the defendant, Southern Refrigeration Services, Inc. The plaintiffs' petition alleged Southern caused a fire that damaged their building and its contents. The insurer of the building, Travelers Company, which paid more than $186,000 to repair the structure, brought the suit in the name of Finger and Monterey House to recover its subrogation interest, but was not named in the petition.

### Fact Summary

In 1978, Finger, as landlord, and Monterey House, as tenant, entered into a 20–year agreement for the structure. By the terms of the lease, Monterey House was required to insure the building for fire damage and name Finger as "the insured" under the policy. Monterey House secured an insurance policy from Travelers.

In 1989, the manager of the Monterey House restaurant called Southern to report problems with its heating system. Southern's repairman inspected the heater, removed a part, and told the restaurant manager not to turn on the heat while he went to get a replacement. Because it was cold and the customers complained, the manager turned the heat on and a few minutes later the building was consumed by a fire.

Travelers paid for the rebuilding of the structure and for the contents. Travelers then brought this suit in the names of the landlord and the tenant to recover its subrogation interest from Southern. At the trial, Finger testified he was the owner of the property. It is undisputed that the building, owned by Finger, was damaged by the fire. On cross-examination, Finger testified:

Q. So Ronald Finger, trustee, as owner of that building, is not damaged. You have got a building back; is that right?

1. The appeal bond lists both Ronald J. Finger and Monterey House as appellants. Finger's brief states Monterey House is not a party to the appeal; Monterey House did not file a brief.

A. That's correct.

On redirect, Finger testified:

Q. So if the structure and the improvements were damaged, that's your loss, isn't it?

A. Yes. It would have been my loss had they not repaired it and had there not been insurance.

The issue of insurance coverage was introduced in front of the jury by both parties, first by the plaintiffs in response to the question above. When the plaintiffs' counsel asked Jan Wilhelm, an officer in the parent corporation of Monterey House, how the costs of the damage to the building and the replacement of the contents had been paid, he answered, "Insurance." Wilhelm testified he had a contractual obligation to assist in the recovery of the money paid on behalf of Finger and Monterey House. On cross-examination of Wilhelm, defense counsel established the plaintiffs' lawsuit was brought by Travelers against Southern to recover the money paid for the fire damage to the building and the contents.

After the plaintiffs rested, Southern made a motion for directed verdict against Finger on the ground that he did not incur damages because the building was repaired by insurance proceeds. The attorney for the plaintiffs argued that Travelers had the right to pursue recovery under Finger's name, because it was Finger's structure that was destroyed. The court disagreed, and directed a verdict against Finger. The case continued with Monterey House as the only plaintiff.

### Motion for directed verdict

In point of error one, Finger contends the trial court erred in granting a directed verdict against him because he raised a fact issue about his damages. As subparts to point of error one, Finger argues there is probative evidence of his damages, and the collateral source rule deems insurance payments irrelevant as an offset or payment. In point of error two, Finger contends the trial court erred in denying his motion for new trial on the issue of the directed verdict. As subparts to point of error two, Finger argues there is probative evidence of his damages, and the collateral source rule deems insurance payments irrelevant as an offset or payment.

■ A party is entitled to a directed verdict when: (1) the other party's pleadings are incapable of supporting a judgment; (2) the other party's evidence does not raise a fact issue; or (3) the evidence conclusively proves a fact that establishes the party's right to judgment as a matter of law. *McCarley v. Hopkins,* 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ). In considering a motion for directed verdict by a defendant, the trial court must view the evidence in the light most favorable to the plaintiff, and disregard all contrary evidence and inferences. *Vance v. My Apt. Steak House, Inc.,* 677 S.W.2d 480, 483 (Tex. 1984). If the plaintiff offers any evidence of probative value on damages, a directed verdict is improper and the issue must be presented to a jury. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *see Vance,* 677 S.W.2d at 484 (conflict in evidence regarding cost of repairs precluded directed verdict).

■ In arguing against the motion for directed verdict, counsel for the plaintiffs pointed out that the structure was damaged and therefore there was evidence that Finger suffered damage. The trial court did not deny the building was damaged; he said he was going to grant a directed verdict because Finger did not spend any of his own money to repair the structure and did not pay the insurance premiums.

■ The trial court erred in holding Finger did not suffer damages. Finger was the owner of the property and he was a named insured under the insurance policy. It does not matter that Finger did not spend his own money to repair the building, that insurance proceeds paid for the repair of the building, or that he did not pay for the premiums. Southern is not a third-party beneficiary of the insurance policy and cannot claim the benefit of a collateral source of payment. The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the

wrongdoer was not privy. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex.1980); *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 581 (Tex.App.—Houston [1st Dist.] 1992, no writ).

The plaintiff also argued to the trial court that he had the right to sue on behalf of Travelers, the insurer that paid the loss; that Travelers was subrogated to the rights of Finger, who was an insured who had a cause of action against Southern. To that argument, the trial judge stated, inexplicably, that the insurance company had the right to sue in subrogation, but because Finger had no damages, there was no action for Travelers to sue on.

A person who pays under a contract for a loss or injury resulting from the wrong of another is subrogated to the rights of the creditor or injured person against the wrongdoer. *See Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 113 (Tex.App.—Dallas 1991, no writ) (subrogation is the substitution of one person in the place of another with reference to a lawful claim or right). An insurer's right to subrogation derives from the rights of the insured and is limited to those rights. *Interstate Fire Ins. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied). A subrogee has the same rights as its subrogor. *Id.; Cockrell*, 817 S.W.2d at 113. Because Finger had the right to sue for damages to his property, Travelers, as the insurance company that paid for the repairs, had the right to sue in his name for its subrogation interest. *See Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex.1980) (one reason for granting an insurance company the right of subrogation is to prevent the insured from receiving a double recovery).

The evidence established that Finger, a named insured in the policy, suffered damages to his building because of the fire. Both Finger and Monterey House had insurable interests in the building. If Monterey House—the entity responsible for paying the insurance premiums and for repairing the building—had defaulted, the loss would have been suffered by Finger. As the owner of the property, Finger had a right to be a party to the suit for damages to his building.

We hold the court erred in granting a motion for directed verdict against Finger.

### Harmless error

The defendant argues that if it was error for the trial court to direct a verdict against Finger, the error is harmless. The defendant points out that Finger does not challenge the finding that Southern was not negligent (question one) or the finding that Southern performed the services in a good and workmanlike manner (question four). The defendant contends that, because these findings are not challenged on appeal, they are final on the issue of Southern's liability.

The only party who appealed the trial court's judgment was Finger. Finger had no obligation to challenge the jury's findings on liability because he was no longer a party to the suit when the charge was submitted. The only issue Finger was required to challenge was the trial court's directed verdict.

We hold the error was harmful. We reverse and remand for trial.

### OPINION ON MOTION FOR REHEARING

On rehearing, we supplement our original opinion. Southern argues we should affirm the trial court judgment because the judgment against Monterey House bars a suit by Finger even if the directed verdict against Finger was error. Southern makes two arguments: any error in directing a verdict against Finger was harmless error, and a suit by Finger is barred by the doctrine of collateral estoppel.

Southern admits that the damages due to Finger were separate from those due to Monterey House. On the issue of liability, however, Southern contends their interests were the same. Thus, Southern argues, collateral estoppel bars a retrial by Finger.

We disagree.

### Collateral Estoppel

The policies behind the doctrine of collateral estoppel reflect the need to bring all litigation to an end, prevent vexatious

litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Benson v. Wanda Pet. Co.,* 468 S.W.2d 361, 363 (Tex.1971). Due process requires that collateral estoppel operate only against persons who have had their day in court, either as parties in the earlier suit or those in privity with a party. *Id.* Within the general doctrine of res judicata, there are two principal categories: (1) claim preclusion (also known as res judicata), and (2) issue preclusion (also known as collateral estoppel). *Barr v. RTC,* 837 S.W.2d 627, 628 (Tex.1992). This case presents a question of collateral estoppel, or issue preclusion.[1]

▮▮▮ Collateral estoppel prevents the re-litigation of a particular fact issue which was resolved in an earlier suit. *Id.* 628; *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). To invoke the doctrine of collateral estoppel a party must establish: (1) the same facts sought to be litigated in the second suit were fully and fairly litigated in the first suit; (2) those facts were essential to the judgment in the first action; and (3) the parties or their privies were cast as adversaries in the first action. *Id.; see also El Paso Nat. Gas Co. v. Berryman,* 858 S.W.2d 362, 364 (Tex.1993).

▮▮▮ The doctrine of collateral estoppel applies only to issues actually litigated in the earlier proceeding. *Benson,* 468 S.W.2d at 362. It applies when the party (or those in privity with him) *against whom* collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the first suit. *Eagle Props., Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990).

▮▮▮ Privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same set of facts. *Benson,* 468 S.W.2d at 363. There is no prevailing definition of privity which can be automatically applied to cases involving issue preclusion. *Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 800 (Tex.1992); *Benson,* 468 S.W.2d at 363. Privity connotes those who are in law

so connected with a party to the judgment as to have such an identity of interests that the party to the judgment represented the same legal right. *Benson,* 468 S.W.2d at 363.

In *Benson,* Mrs. Benson and her husband were riding in an automobile driven by the Porters when the car collided with a truck owned by Wanda Petroleum. Initially, the Porters and Mrs. Benson filed separate lawsuits against Wanda Petroleum, but they were consolidated. Just before trial, Mrs. Benson took a non-suit. In the Porters' lawsuit the jury found that Wanda Petroleum was not negligent and Porter was. When Mrs. Benson re-filed her lawsuit, the trial court granted a summary judgment in favor of Wanda Petroleum. *Id.* The Supreme Court held collateral estoppel did not prevent Mrs. Benson from suing Wanda Petroleum for the following list of reasons: Mrs. Benson was not a party to the Porter suit; the Porters did not represent her interests; Mrs. Benson did not exercise any control over the Porter suit; and Mrs. Benson did not have any beneficial interest in the recovery. In summary, the court held the privity relationship was not sufficient to support the application of the rules of res judicata. *Id.* at 364. Similarly, in *Bonniwell,* when a jury found Beech Aircraft was not liable in a suit for negligence and products liability, filed by one of many plaintiffs involved in an airplane crash, the jury's finding did not preclude the Bonniwell plaintiffs from filing suit with the same causes of action. *Bonniwell,* 663 S.W.2d at 819.

▮▮▮ As in both *Benson* and *Bonniwell,* the two plaintiffs in this case suffered damages from the same incident. As in *Benson,* when Monterey House litigated liability it was found negligent and Southern was absolved of negligence. As in *Benson* and *Bonniwell,* Finger is entitled to his day in court. Although Finger may have been in privity with Monterey House as to some of the damages, Finger was not a party to Monterey House's suit once he was directed out; Monterey House did not represent Finger's interests; Finger did not exercise any con-

---

1. Even the Supreme Court acknowledges that its opinions on res judicata are difficult to reconcile.

*Barr,* 837 S.W.2d at 629.

trol over Monterey House's suit. In summary, Finger's privity relationship with Monterey House did not bar the lawsuit.

Finger's cause of action against Southern should have been tried with that of Monterey House. It was Southern, however, who prevented a joint trial by moving for an instructed verdict. Southern's stated reason for the instructed verdict was that Finger admitted he did not have any damages. That reason was erroneous; Finger admitted only that insurance proceeds paid for the rebuilding, he did not admit that he had no damages. Having caused the error which resulted in Finger's removal from the lawsuit, Southern now argues that it was harmless.

Southern contends that Finger had his day in court and the case was fully adjudicated. We disagree. The defense spent much of final argument telling the jury that Finger's damages were not involved in the lawsuit; that the only jury question on damages was for Monterey House; that the Monterey House's damages were limited to $10,000, which represented its deductible; that the jury could not consider the insurance company's payment to rebuild the restaurant because it was not a party ("Travelers should not get 50 cents").

Even if collateral estoppel applied in this case, we have the discretion to refuse to apply it if it would be unfair. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986). In exercising that discretion, we are to consider the fairness factors outlined by the United States Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). *Scurlock Oil*, 724 S.W.2d at 7; *see also Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 563 (Tex.App.—Corpus Christi 1990, no writ). Those factors (and our answers) are:

1. Whether the use of collateral estoppel will reward a plaintiff who could have been joined in the earlier suit but chose to "wait and see." No.

2. Whether the defendant in the first suit had the incentive to litigate that suit fully and vigorously. Yes.

3. Whether the second suit will afford the defendant procedural opportunities un-

available in the first suit that could cause a different result. No.

4. Whether the judgment in the first suit is inconsistent with any other earlier decision. No.

We hold that Finger's suit is not barred by the first suit. We reverse and remand for trial.

COHEN, J., requested a vote to determine if the case should be heard en banc, pursuant to Tex.R.App.P. 79(d), (e) and Tex.R.App. P. 90(e).

OLIVER–PARROTT, C.J., and HUTSON–DUNN, MIRABAL, O'CONNOR, WILSON and HEDGES, JJ., voted against en banc consideration.

ANDELL, J., did not participate.

COHEN and DUGGAN, JJ., dissented from the denial of en banc consideration.

## OPINION FROM DENIAL OF MOTION FOR REHEARING EN BANC

COHEN, Justice, dissenting.

In this subrogation case, the landlord (Ronald J. Finger) and the tenant (Monterey House) were both named insureds under a fire policy issued by Travelers Insurance Company. After the insured premises burned, the same lawyer represented both Finger and Monterey House. He filed one petition for both accusing Southern Refrigeration Services of the identical acts of negligence that caused the fire. Therefore, at least in regard to liability, Finger and Monterey House were identically situated as plaintiffs. That explains why they used the same lawyer and the same petition.

I agree with the panel that the judge erred by granting a directed verdict against Finger, but I am convinced the error was harmless. Rule 81 provides that no civil judgment shall be reversed unless the error probably caused an improper judgment. Tex.R.App.P. 81(b)(1). This rule of law is not cited in the panel opinion or in Mr. Finger's two briefs on appeal.

The controlling fact in this case is that the jury found that the plaintiff, Monterey

House, was negligent and that the defendant, Southern Refrigeration, was not negligent. Because Finger's liability case was identical to Monterey House's, Finger was not harmed. If the directed verdict had never been granted, Finger still would have lost for the same reason Monterey House lost—Southern Refrigeration was not negligent. Nothing suggests that the jury would have reached any other verdict if Finger had remained in the lawsuit. Nobody contends that the jury issue on liability would have been different.[1] Even if it had been, a verdict that Southern Refrigeration was not negligent as to the tenant but was negligent as to the landlord would have to be set aside on appeal as being nonsensical under these facts and in irreconcilable conflict with itself.

Finger contends that the jury's verdict doesn't matter. He states:

> [Southern Refrigeration] curiously argues that the issue of damages is academic because the jury did not find liability against Southern Refrigeration Services, Inc. as far as Monterey House was concerned. The failure of the jury to find any liability against Southern Refrigeration on Monterey House's claims is clearly irrelevant and a "red herring" to the issue on appeal. Finger already had a directed verdict wrongly entered against him before *his* issue of negligence could be submitted to the jury. Also, the improper granting of the directed verdict may have tainted the outcome of the entire case.

> The only relevant issue that should be considered by this Honorable Court is whether appellant presented probative evidence sufficient to raise a fact issue on damages since that was the grounds for the entry of the directed verdict.

Finger's reply brief (all emphasis in original). There are two flaws in this argument. First, Finger does not state how "his issue of negligence" would have been any different. Plainly, it would not have been. Second, Finger does not say how the directed verdict tainted the case. Plainly, it did not. Because Finger's liability case was identical to

Monterey's, he was not harmed. Finger's lawyer made the same presentation to the same jury based on the same allegations in Finger's petition. Thus, Finger's case was fully heard, and the jury found it to have no merit.

The panel's original opinion did not state any way that Finger was harmed. The opinion on rehearing states that the defense argued to the jury that Finger's damages were not involved in the lawsuit; that the only jury question on damages was from Monterey House and Monterey House's damages were limited to $10,000.00; and that the jury should not consider the insurance payment because Travelers was not a party. None of this, however, affects the issue of liability, the sole issue on which the jury decided this case. Therefore, these acts did not cause the rendition of an improper judgment.

The issue here is not whether this verdict prevents Finger from pursuing Southern in *another* trial. The controlling but neglected question in this case is whether the directed verdict harmed Finger in *this* trial.

I would hold that the error was harmless and affirm the judgment. I respectfully but vigorously dissent.

DUGGAN, J., joins this opinion.

---

1. The controlling issue asked, "Did the negligence, if any, of those named below proximately cause the fire in question?" The jury was to answer yes or no for Southern Refrigeration and Monterey House.