**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00354-CV

————————————

## JAMAYALL RICHARD, Appellant

## V.

## MARCELA AYALA AND MOISES AYALA, Appellees

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2011-43986

## MEMORANDUM OPINION

This is a negligent entrustment case. In an earlier lawsuit, Jamayall Richard sued the driver of the vehicle that struck him. The driver, Edwin Ayala, testified that, at the time of the accident, he was 16 years old, he had only a learner's permit, and his parents had, on occasion, allowed him to drive alone in violation of

the permit's restrictions. A sizable judgment was entered against Edwin, who had turned 18 by the date of trial.

Based on the trial testimony, Richard sued Edwin's parents, Marcela and Moises Ayala, for negligent entrustment. In the second suit, Richard contended that the judgment from the first suit established the amount of his damages and barred the parents from challenging the damages that would be owed if they were found to have negligently entrusted a vehicle to their son.

The trial court found liability under the negligent-entrustment theory, but determined that Richard could not use offensive collateral estoppel to bind the parents to the amount of damages found in the first suit. As a result, he could not rely on the final judgment and findings of fact and conclusions of law to establish the amount of his damages. Because Richard offered no other evidence of damages, the court concluded that he failed to prove by a preponderance of the evidence that he sustained any damages. The trial court, therefore, entered a take-nothing judgment against Richard.

In his first issue, Richard contends that the trial court's failure to award any damages is so against the great weight and preponderance of the evidence as to be manifestly unjust. In his second issue, Richard contends that the trial court erred by failing to apply collateral estoppel against the parents.

We reverse and remand.

## Background

Richard was involved in a motor vehicle accident when a car driven by a 16-year-old, unlicensed, and uninsured driver struck his motorcycle. Richard sued the driver, Edwin Ayala. Edwin's parents, Marcela and Moises Ayala, hired counsel to represent him. The Ayalas left the country during their son's trial but later returned.

At the trial, Edwin, who by that time was an adult, testified that his learner's permit required him to have an adult in the vehicle with him when he drove. It was undisputed that he did not have an adult in the car with him when he struck Richard's motorcycle. Edwin also testified that the car he was driving had been purchased by his uncle for his benefit and that his parents had given him the keys. He stated that his parents "occasionally" allowed him to drive the car without an adult.

The bench trial ended with a judgment against Edwin. The trial court made findings of fact and conclusions of law, which included the following:

14. [Edwin] was solely negligent in causing the crash of July 27, 2009, and made the basis of this lawsuit.

15. [Edwin]'s negligence proximately caused the injuries sustained by Richard.

16. Richard sustained serious and permanent and disabling injuries as a result of [Edwin]'s negligence.

3

17. Richard was required to have numerous surgeries to repair the fractures to his body and repair his heart.

18. Richard has hardware and metal placed in his body that will remain there for the rest of his life.

19. Richard was 26 years of age at the time of the crash.

. . . .

21. Richard has incurred reasonable and necessary medical expenses in the past in the amount of $501,828.57.

22. Richard incurred lost wages in the past in the amount of $52,000.00.

The final judgment awarded Richard damages, including $501,828.57 in past medical expenses, $52,000 in past lost wages, $30,000 in future lost wages, $4,500 in diminished value of his vehicle, and several million dollars spread among various categories of damages, including impairment, disfigurement, pain and suffering, and mental anguish. The total judgment was for $7.1 million.

Based on Edwin's testimony that his parents gave him the car to drive and allowed him to drive without an adult, Richard then brought a negligent entrustment suit against the Ayalas. Richard's first amended petition asserted that "the issue of Edwin Ayala's negligence and the damages suffered by [Richard] have previously been adjudicated and are binding on this court." The Ayalas filed a general denial.

At the bench trial against the Ayalas, Richard proffered, and the trial court admitted, without objection, two documents from the suit against Edwin: (1) the

final judgment awarding Richard approximately $7 million in damages and (2) the trial court's findings of fact and conclusions of law. When Richard testified, he did not discuss his injuries or the amount of his medical bills. Instead, he asked the trial court to award as damages the amount that the other trial court, in the earlier bench trial, had awarded. The testimony was as follows:

> Q. And the award of damage that you are asking for joint and several on are as they are contained within the Final Judgment admitted into the court as Plaintiff's Exhibit Number 1 [the Final Judgment against Edwin Ayala]. Correct?
>
> A. Yes, ma'am.

The Ayalas did not cross-examine Richard. No additional evidence was proffered that tended to establish or call into question the extent of Richard's injuries or the amount of damages suffered.

Edwin did not testify at his parents' trial. Instead, his earlier testimony was presented. Both of the Ayalas testified. Marcela testified that her son had "lied" at the earlier trial and that they never allowed him to drive without an adult in the car. Moises testified similarly. He stated that the car belonged to a family member, it was never meant for Edwin, no one gave him permission to drive it, and the parents were unaware that he had ever driven without an adult in the car.

The trial court found that the Ayalas had negligently entrusted the vehicle to their son, but the court, nonetheless, entered a take-nothing judgment against

5

Richard. The court issued findings of fact and conclusions of law. The findings and conclusions relevant to liability included the following:

4. To the extent that Edwin Ayala's testimony (from Mr. Richard's earlier lawsuit against him in Cause No. 2010-37930) conflicts with the testimony of Mr. or Mrs. Ayala, the Court credits Edwin Ayala's testimony. Edwin Ayala had no apparent incentive to lie about his parents' ownership or right of control of the 2000 Saturn or their entrusting the car to him. . . .

5. Plaintiff established by a preponderance of the evidence that Mr. and Mrs. Ayala owned the 2000 Saturn that Edwin Ayala was driving when he collided with Mr. Richard.

6. Alternatively, Plaintiff established by a preponderance of the evidence that Mr. and Mrs. Ayala had a right of control over the 2000 Saturn superior to that of Edwin Ayala.

. . . .

11. At the time of the collision, Mr. and Mrs. Ayala knew that Edwin Ayala was not permitted to drive without a licensed driver.

12. The parties do not dispute that Edwin Ayala was negligent or that his negligence caused the collision with Mr. Richard.

13. Mr. Richard proved by a preponderance of the evidence that Mr. and Mrs. Ayala negligently entrusted the 2000 Saturn to Edwin Ayala, who was an unlicensed driver; that they knew Edwin Ayala was unlicensed; and that Edwin Ayala was negligent.

. . . .

4. To recover on a claim of negligent entrustment, a plaintiff must prove: . . . (f) The driver's negligence proximately caused injury to the plaintiff.

The trial court also made findings related to damages:

6

14. The only items of evidence that Mr. Richard offered on the amount of damages he suffered were the Judgment and the Findings of Fact and Conclusions of Law that the trial court entered in his lawsuit against Edwin Ayala in Cause No. 2010-37930.

15. Mr. Richard failed to prove his damages by a preponderance of the evidence.

Finally, the trial court made conclusions of law relevant to his finding against any damages. These included the following:

14. Collateral estoppel does not apply to this case. Neither Mr. nor Mrs. Ayala were parties in Cause No. 2010-37930, nor were they in privity with Edwin Ayala in that case for purposes of collateral estoppel.

15. Additionally, applying offensive collateral estoppel in the manner Mr. Richard requests in this case would be unfair. Neither Mr. nor Mrs. Ayala were parties in the prior lawsuit against Edwin Ayala. Nor is there any evidence that they [were] on notice before that trial that Mr. Richard was asserting any claims against them. There is no evidence that they were served with a subpoena to attend that trial.

16. Because collateral estoppel does not apply, the evidence that Mr. Richard offered to prove the amount of damages (specifically, the Judgment and the Findings of Fact and Conclusions of Law from Cause No. 2010-37930) is legally and factually insufficient to support a finding in this case on the amount of damages by a preponderance of the evidence.

After his motion for a new trial was denied, Richard timely appealed the take-nothing judgment.

7

## Collateral Estoppel

The trial court held that Richard could not use offensive collateral estoppel to bind the Ayalas to the amount of damages awarded in an earlier suit against their son to which they had not been parties. The trial court specifically concluded that it would be unfair to do so. Richard argues that the trial court erred by refusing to apply collateral estoppel.[1]

### A. Applicable rule

"Collateral estoppel prevents the re-litigation of a particular fact issue which was resolved in an earlier suit." *Finger v. S. Refrigeration Servs. Inc.*, 881 S.W.2d 890, 895 (Tex. App.—Houston [1st Dist.] 1994, writ denied). It is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Serv. Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). "Collateral estoppel can be applied offensively or defensively." *Case Funding Network, L.P. v. Anglo-Dutch Petroleum Int'l, Inc.*, 264 S.W.3d 38, 57 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

---

[1] As discussed below, we review whether privity exists for collateral estoppel de novo. *See Andrew Shebay & Co., P.L.L.C. v. Bishop*, 429 S.W.3d 644, 648 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Martin v. U.S. Trust Co. of New York*, 690 S.W.2d 300, 307 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 680 (Tex. App.—Waco 1998, no pet.). We review whether application of the doctrine would be fair for an abuse of discretion. *See Finger v. S. Refrigeration Servs. Inc.*, 881 S.W.2d 890, 896 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

A party seeking the benefit of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Trapnell*, 890 S.W.2d at 801. But strict mutuality of parties is no longer required. *Id.* "[I]t is only necessary that the party against whom the doctrine is asserted was a party or in privity with a party in the first action." *Id.* at 802; *Neely v. Comm'n for Lawyer Discipline*, 976 S.W.2d 824, 827 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

"[P]rivity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts." *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971); *see Finger*, 881 S.W.2d at 895. Nor does sharing the same counsel establish privity. *Tx. Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 267 (Tex. App.—Texarkana 2002, pet. struck).

There is no generally prevailing definition of privity that can be automatically applied; "the determination of who are privies requires careful examination into the circumstances of each case as it arises." *Benson*, 468 S.W.2d at 363; *see Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 800 (Tex. 1992). "[P]rivity connotes those who are in law so connected with a party to the judgment

9

as to have such an identity of interest that the party to the judgment represented the same legal right." *Benson*, 468 S.W.2d at 363.

In *Benson*, a vehicle owned by Benson was being driven by her acquaintance, Porter, when it collided with a large truck owned by Wanda Petroleum. Both Benson and Porter sued Wanda Petroleum, but Benson voluntarily non-suited, leaving only Porter (the driver) in the suit. *Id.* at 362. The jury found that Porter was negligent and the driver of the Wanda Petroleum vehicle was not. *Id.* When Benson refiled her suit against Wanda Petroleum, the trial court ruled that the liability determinations in the first suit were binding on Benson, even though she was no longer a party to the litigation when it was tried and had not participated in the trial. *Id.* The appellate court affirmed, concluding that Benson and Porter were in privity. *Id.* The Texas Supreme Court reversed, concluding that there was no privity:

> Mrs. Benson was not a party to the former action . . . . It was not shown that Mrs. Benson participated in, or exercised any control over, the trial in the Porter suit, or that she had any right to do so. She was not shown to have any beneficial interest in the recovery of damages for personal injuries on behalf of the Porters. In our view, the requirements of due process compel the conclusion that a privity relationship which will support application of the rules of res judicata does not exist under these circumstances.

*Id.* at 364. Collateral estoppel is only applied when the party who would be estopped has "had a full and fair opportunity to litigate the issue in the first suit." *Finger*, 881 S.W.2d at 895.

10

## B.    Whether the parties are privies

The privity element of collateral estoppel is an issue of law that we review de novo. *See Andrew Shebay & Co., P.L.L.C. v. Bishop*, 429 S.W.3d 644, 648 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Martin v. U.S. Trust Co. of New York*, 690 S.W.2d 300, 307 (Tex. App.—Dallas  1985, writ ref'd n.r.e.); *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 680 (Tex. App.—Waco 1998, no pet.).

The Ayalas were not parties in the first suit. Nor did they attend the trial of that case or exercise any control over the defense. *See Benson*, 468 S.W.2d at 363. Further, their legal rights—including protecting their financial assets—were different than those of their son, who would be individually liable for any judgment entered against him. *See id.* While these parents may have had a parental interest in whether their son was found liable for Richard's damages, they did not have their legal or pecuniary interests represented in the suit against their son. Unlike in the context of a general partner sued after obtaining a judgment against a partnership, the Ayalas were not automatically liable for a judgment debt against their adult son. *Cf. Elmer v. Santa Fe Props., Inc.*, No. 04-05-00821-CV, 2006 WL 3612359, at *3 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) (mem. op.) (after noting that partner was not protected from liability for partnership's debts under lease agreement, holding that plaintiff-creditor could sue partner after obtaining

11

judgment against partnership and use collateral estoppel to prevent partner from relitigating liability issues previously decided). The Ayalas did not have "a full and fair opportunity to litigate the issue" of the extent of Richard's damages.

Accordingly, the trial court did not err by concluding that there was no privity between the Ayalas and their son.

## C. Whether offensive collateral estoppel would be unfair

The trial court also determined, as stated in its findings of fact and conclusions of law, that applying offensive collateral estoppel against the Ayalas would be unfair.

A trial court has broad discretion to determine whether offensive collateral estoppel without mutuality of parties would be fair to apply under the facts of the case presented. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S. Ct. 645, 651 (1979); *see Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986) (op. on reh'g). A trial court abuses its discretion only when its action is arbitrary and unreasonable, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The Supreme Court has offered examples of when it would be unfair to apply offensive collateral estoppel against a defendant, even with privity. *See Parklane Hosiery*, 439 U.S. at 329–31, 99 S. Ct. at 650–51; *see Scurlock Oil Co.*,

724 S.W.2d at 7. One example given was that it would be unfair to bind a defendant in a second action to the legal determinations in an earlier action that involved only small or nominal damages, did not present the defendant with much incentive to vigorously defend, and a second suit was not foreseeable. *Parklane Hosiery*, 439 U.S. at 330, 99 S. Ct. at 651. This example assumes that it is the same defendant in both suits. *See id.* That assumption is consistent with the accepted definition of offensive collateral estoppel as "a plaintiff [ ] seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Id.*

Here, the defendants are not the same. But the reasoning applies equally. In the first suit, Richard was seeking a monetary judgment against Edwin, the Ayalas' adult son. Under no presented theory would the Ayalas have been financially responsible for their son's judgment debt. The Ayalas had no incentive to "vigorously defend" the liability or damages issue, given the lack of financial interest they had in the suit. Nor was there any indication that a second suit for negligent entrustment would be brought. They had not been sued; there was no indication that they would be added to the suit.

Accordingly, we conclude that this situation is analogous to the example offered in *Parklane Hosiery* and that offensive collateral estoppel under these facts would be unfair. The trial court did not abuse its discretion by reaching that same

conclusion. This presents a second basis for affirming the trial court's ruling that offensive collateral estoppel did not apply.

We overrule Richard's second issue.

**Factual Sufficiency**

In his first issue, Richard argues that the final, take-nothing judgment entered against him on his negligent entrustment claim was against the great weight and preponderance of the evidence. We construe this to be a factual sufficiency challenge.

Having already concluded that the final judgment and findings of fact and conclusions of law from the first suit did not establish the amount of Richard's damages or collaterally estop the Ayalas from contesting the amount of damages, we turn to whether Richard presented factually sufficient evidence of his damages to conclude that the trial court erred by entering a take-nothing judgment.

**A.     Standard of review**

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Benavente v. Granger*, 312 S.W.3d 745, 748 (Tex. App.–Houston [1st Dist.] 2009, no pet.) (quoting *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex. 2001)). In reviewing a challenge that a finding is against the great weight and preponderance

of the evidence, we consider and weigh all of the evidence and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *McMahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A factfinder may believe one witness and disbelieve another, and it may resolve inconsistencies in any witness's testimony. *Eberle v. Adams,* 73 S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

## B.      There was undisputed evidence that Richard was injured

The trial court's findings of fact and conclusions of law, as well as the final judgment, from Richard's suit against Edwin were admitted as evidence in his suit against the Ayala parents. The Ayalas did not object to their admission. Richard argues that the findings of fact and conclusions of law "independently established Richard's damages in great specificity and detail." He further notes that the Ayalas "introduced no evidence on damages to contradict" either of these two exhibits. Thus, the two exhibits were the only evidence on damages before the trial court.

The trial court concluded that the two exhibits provided "insufficient [evidence] to support a finding . . . on the *amount* of damages by a preponderance of the evidence." (Emphasis added.) But that does not mean that there was *no evidence* that he was damaged as a result of the accident. The exhibits listed the earlier trial court's findings, including that "Richard sustained serious and

15

permanent and disabling injuries," "was required to have numerous surgeries to repair the fractures to his body and repair his heart," and "has hardware and metal placed in his body that will remain there for the rest of his life." The earlier trial court found that "Richard has incurred reasonable and necessary medical expenses in the past in the amount of $501,828.57," as well as "lost wages in the past in the amount of $52,000.00." Finally, there was a finding that Edwin "Ayala's negligence proximately caused the injuries sustained by Richard."

Without any competing evidence, this was the totality of evidence before the trial court related to damages. The Ayalas do not offer any argument or authority suggesting that the statements in the unobjected-to exhibits have no probative value or cannot be considered as evidence. These exhibits provide some evidence of an objective injury and reasonable and necessary medical expenses caused by Edwin's negligence. *Cf.* TEX. R. EVID. 802 (stating that inadmissible hearsay evidence admitted without objection is not denied probative value merely because it is hearsay). As some evidence of damages, it was against the great weight and preponderance of this evidence to conclude that Richard had no damages. *See Prescott v. Kroger Co.*, 877 S.W.2d 373, 376 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (concluding that zero dollar award for pain and suffering damages following back surgery was so against great weight of evidence as to be manifestly unjust); *compare Davis v. Davison*, 905 S.W.2d 789, 791 (Tex. App.—

16

Beaumont 1995, no writ) (jury's award of zero damages for past medical bills, past mental anguish, and past physical pain was against great weight and preponderance of evidence because plaintiff's burns were objective and documented) *with Imamovic v. Milstead*, No. 01-13-01030-CV, 2015 WL 505383, at *5 (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, no pet.) (mem. op.) (because causation was disputed and plaintiff's injuries were subjective—instead of objective—jury's award of zero damages was not so against great weight and preponderance of evidence to be manifestly unjust).

The trial court was correct to note that—absent the imposition of collateral estoppel—it was not bound to award the full amount of damages awarded in the other suit. However, having decided the issue of liability in Richard's favor, that ruling necessarily included a determination that Richard had established the elements of his underlying negligence claim, including that the driver proximately caused injury to Richard. *See De Blanc v. Jensen*, 59 S.W.3d 373, 375–76 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("To establish negligent entrustment of an automobile, a plaintiff must prove . . . [that] the driver's negligence proximately caused the accident and the plaintiff's injuries."); *Bedford v. Moore*, 166 S.W.3d 454, 459 (Tex. App.—Fort Worth 2005, no pet.). The trial court noted as much in its conclusions of law, including that, "[t]o recover on a claim of negligent entrustment, a plaintiff must prove: . . . (f) [t]he driver's negligence

17

proximately caused injury to the plaintiff." *Cf. Green v. Tx. Elec. Wholesalers, Inc.*, 651 S.W.2d 4, 7 (Tex. App.—Houston [1st Dist.] 1982, writ dim'd by agr.) ("A finding of proximate cause as between the driver and the injured party will establish a causal connection between the owner and the injured party. . . . [P]roximate cause . . . [is] imputed to the owner." (citing *Spratling v. Butler*, 240 S.W.2d 1016 (Tex. 1951) and *McIntire v. Sellers*, 311 S.W.2d 886 (Tex. Civ. App.—Austin 1958, writ ref'd n.r.e.))).

The trial court's take-nothing judgment—awarding zero damages after finding liability—was so against the great weight and preponderance of the evidence as to be manifestly unjust and require a new trial. At a minimum, Richard presented undisputed evidence that he had "numerous surgeries to repair the fractures to his body and repair his heart" and had over $500,000 in "reasonable and necessary medical expenses" as a result of the accident. While the trial court, faced with such sparse evidence, may have had difficulty ascertaining an amount of damages, it could not award no damages under these facts.

We sustain Richard's first issue.

## Conclusion

We reverse the trial court's judgment and remand for a new trial. *See* TEX. R. APP. P. 44.1(b) ("The court may not order a separate trial solely on unliquidated damages if liability is contested); *Rancho La Valencia, Inc. v. Aquaplex, Inc.*, 383

S.W.3d 150, 152 (Tex. 2012) (holding that remand of unliquidated damages claim required remand of contested liability issue as well).


                                        Harvey Brown
                                        Justice

Panel consists of Justices Jennings, Higley, and Brown.